ASPHALT CONST. CO. v. BOUKER et al.

(Supreme Court, Appellate Division, First Department.   May 31, 1912.)

1. CORPORATIONS (§ 314*)—OFFICERS—MISFEASANCE—CORPORATE MISMANAGE-
MENT.

   K., who was vice president and general manager of plaintiff asphalt
   company, knowing that plaintiff desired to purchase a quantity of as-
   phalt, himself contracted with a California corporation to purchase the
   same on his own account, and a few days thereafter contracted to fur-
   nish the same to plaintiff at a secret profit pursuant to a resolution of
   plaintiff's board of directors, of which K. and his codefendants consti-
   tuted a majority, and K. thereafter assigned a one-fourth interest in his
   contract to each of the three other defendants.  *Held* to constitute mis-
   feasance rendering each of the parties liable to account to the corpora-
   tion for the entire sum which they diverted from the corporation.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398,
   1400; Dec. Dig. § 314.*]

2. CORPORATIONS (§ 319*)—DIRECTORS—MISCONDUCT—ACCOUNTING—EQUITY.

   Where directors of a corporation by certain contracts sold to it a quan-
   tity of asphalt at a secret profit to themselves, they bore a trust relation
   to the specific sums of money received by them as such profit, and were
   therefore properly required to account therefor in equity.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1415–1425;
   Dec. Dig. § 319.*]

   Scott and Laughlin, JJ., dissenting in part.

Appeal from Judgment on Report of Referee.

Action by the Asphalt Construction Company against De Witt C.
Bouker, Jr., and another, impleaded.  From an order overruling ex-
ceptions to and confirming the report of a referee and from a final
judgment entered thereon in favor of plaintiff, defendants appeal.
Affirmed.

See, also, 137 App. Div. 918, 122 N. Y. Supp. 1121.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

L. Laflin Kellogg, of New York City, for appellants.
Edward W. Hatch, of New York City, for respondent.

MILLER, J.  Even if the provisions of the interlocutory judgment
be ambiguous, when construed in the light of the findings and the
character of the action, they justify the judgment appealed from.  The
complaint demanded that the defendants be required to account and
"jointly and severally to pay to the plaintiff company the aggregate
amount of all profits received by them or either of them and such
damages as the plaintiff company may have sustained. * * *"
It is of no consequence that the complaint charged conspiracy to
cheat and defraud and that there is no finding in terms of a con-
spiracy.  The facts as found establish a breach of fiduciary duty,
participated in by all of the defendants so as to make them jointly
and severally liable.

[1] On the 29th of May, 1902, the defendant Kelly, who was
the plaintiff's vice president and general manager, entered into an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreement with the Densmore-Stabler Company of Los Angeles, Cal., whereby the latter agreed to sell and deliver to him for a period of five years not less than 100 tons and not more than 200 tons per year of liquid or flux asphalt at $14.20 per ton, and not less than 900 and not more than 1,800 tons per year of D. asphalt at $13.20 per ton. On the 3d of June, 1902, pursuant to a resolution of the plaintiff's board of directors, of which the defendants constituted a majority, he entered into a contract with the plaintiff whereby he agreed to sell and deliver to it for a like period precisely the same quantities of the kinds of asphalt specified in the contract of May 19th at $33 per ton. It is of no consequence that the appellants did not know of the contract of May 19th, when they voted for the resolution authorizing the contract of June 3d, for on July 29, 1902, each accepted from Kelly a written assignment of one-fourth of his interest in the contract of May 19th, and that assignment recited the terms of that contract. Thus, as early as July 29th, the appellants were informed that Kelly was making a secret profit of more than 130 per cent. and 150 per cent. respectively, on the two kinds of asphalt which he had agreed to sell to the plaintiff, and, instead of taking steps to prevent the further consummation of that wrong, they became active participants in it by taking to themselves an assignment of a share of the spoils. Of course, it was Kelly's duty to obtain asphalt for the plaintiff upon the most advantageous terms possible, and not to make a secret profit out of the transaction. He was able to, and did, purchase the two kinds of asphalt at $14.20 and $13.20 per ton, respectively. The plaintiff was entitled to the benefit of that contract. Its funds were diverted to the extent of the excess charged by Kelly, and the appellants were guilty, not merely of nonfeasance in failing to prevent the wrong, but of misfeasance in actively participating in it, and it seems to me that they can be required to account in equity for their official misconduct and to restore to the corporation the entire sum which they actively participated in diverting.

[2] We necessarily decided, in affirming the interlocutory judgment, that the action was properly in equity. The distinction between an action at law for damages and one in equity for an accounting, and the principle, upon which the latter might be maintained, were stated by Mr. Justice Ingraham, in O'Brien v. Fitzpatrick, 6 App. Div. 509–514, 39 N. Y. Supp. 707, affirmed on the opinion below, 150 N. Y. 572, 44 N. E. 1126. In this case the appellants bore a trust relation to the specific sums of money, for which they are required to account. Manifestly, an accounting was proper to determine the amount of the secret profits realized at the expense of the plaintiff; and it seems to me that the decision of the Court of Appeals in Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667, is decisive of the proposition that in equity the defendants are to be treated as trustees with respect to the entire amount of those profits, irrespective of the share which each received. The case against each rests, not upon the mere receipt by him of corporate funds, but upon a breach of duty, resulting in the

diversion of corporate funds to him and to others, all of whom participated in the wrong.

The judgment should be affirmed, with costs.

INGRAHAM, P. J., and CLARKE, J., concur.

SCOTT, J. (dissenting). This appeal from the final judgment brings up nothing for review by this court, except such questions as are involved in the proceedings since an affirmance of the interlocutory judgment, and the only question which seems to call for consideration is as to the amounts for which plaintiff should have judgment against the defendants Bouker.

The action is brought in equity to compel the defendants to account for certain secret profits realized by them from a contract into which the plaintiff was induced to enter.

The decision upon which the interlocutory decree was based finds that the defendant Kelly was a director and vice president, and the defendants Bouker were directors, of the plaintiff; that Kelly individually held a contract with a California corporation under which he was entitled to purchase asphalt at a certain price; that on June 3, 1902, said Kelly entered into a contract with plaintiff for the sale to it of said asphalt at a much higher price than that at which he could purchase the same from the California corporation; that the making of this contract was authorized by the votes of the defendants William Kelly and De Witt C. Bouker, Jr.; that at the time said last-mentioned contract was made the fact that Kelly had a contract with the California corporation was kept a secret from plaintiff and was known only to said Kelly and John A. Bouker, the then president of the plaintiff; that subsequently and on July 29, 1902, the said Kelly executed two contracts, by one of which he assigned to De Witt C. Bouker, Jr., and and by the other of which he assigned to John A. Bouker, and Andrew A. Bouker, a one-quarter interest in the profits to be derived from his contract with the California corporation, which, of course, meant one-quarter of the profits to be derived from his contract with plaintiff; that when these assignments were made, the defendants Bouker were directors of plaintiff and accepted the assignment with full knowledge of the fiduciary relations of said Kelly to plaintiff, and the nature of the contract from which said profits were to be derived; and that in accepting said assignments and the payment of the money thereunder they acted unconscionably and inconsistently with their duty as trustees of plaintiff, and in violation of their trust.

It appears from the report of the referee appointed by the interlocutory decree that the defendant Kelly realized as profits from the contract with plaintiff the sum of $23,161.25, of which he paid to the defendants Andrew A. Bouker and De Witt C. Bouker, Jr., each, the sum of $5,270.43. The final decree awards judgment against all three defendants for the whole profit realized by Kelly, and the question raised by the appeal of the defendants Bouker is whether

they should be mulcted for anything more than the several amounts which they received.

It is insisted by the respondent that, when an interlocutory judgment determines and directs the final judgment to which a party is entitled, the final judgment must follow the interlocutory judgment. This is undoubtedly the rule when the interlocutory decree is clear and unambiguous. Reilly v. Freeman, 109 App. Div. 4, 95 N. Y. Supp. 1069, affirmed 184 N. Y. 610, 77 N. E. 1196. In the present case the interlocutory decree, if it does not specifically provide for a separate judgment against each defendant for the share of the profits received by him, is at least open to that construction. It provides:

"Ordered and adjudged that the defendants be, and they hereby are, and each of them is, required to account to the plaintiff, before a referee to be herein appointed, for the profits received by them, and each and either of them, upon sales of asphalt made to the plaintiff under a certain contract dated June 3, 1902, made and executed between the plaintiff and said defendant, William Kelly, and of all and every the trust property, issues, and profits which may have come to the hands of the defendants, or either of them, or any other person or persons, to the use or order of them; and it is * * * further ordered and adjudged that on the coming in of said referee's report, and the confirmation of the same, the plaintiff recover from the defendants, and each of them, the sum that may be found due to it upon such accounting, and that a final judgment be thereupon entered accordingly in favor of the plaintiff and against the defendants for the sum or sums so found due, together with the costs and disbursements to be taxed and entered in said final judgment in favor of the plaintiff and against said defendants, and that the plaintiff have execution therefor."

If the interlocutory judgment be ambiguous as to the form of final judgment to be entered, it is our duty to construe it in the light of the decision made by the court and the character of the litigation. Spier v. Hyde, 47 Misc. Rep. 443, 95 N. Y. Supp. 952. There is a well-recognized distinction between an action "in equity" against a director of a corporation for an accounting with respect to property of a corporation that has actually come into its hands, and an action "at law" for damages sustained by the corporation in consequence of his willful or negligent acts falling within the terms "misfeasance" or "nonfeasance." People v. Equitable Life Assurance Society, 124 App. Div. 714–733, 109 N. Y. Supp. 453. The present action is clearly of the first class. It is true that the complaint charges all the defendants with having conspired for the purpose of cheating and defrauding plaintiff by inducing the contract between Kelly and the California corporation and the later contract between Kelly and the plaintiff; but the decision fails to find that any such conspiracy existed, and indeed negatives its existence by a finding that, when Kelly entered into the contract with plaintiff, the existence of Kelly's contract with the California corporation was kept a secret, and was known only to Kelly and John A. Bouker; the necessary inference being that it was then unknown to the appellants. The only case made against the appellants by the decision is that they accepted from Kelly a portion of the secret and illegal profits realized by him, with knowledge of his fiduciary relation to the plaintiff, and of the

source of such profits. The measure of their liability in such a case is well settled, and is thus stated by a leading authority:

"Where directors are charged in equity to account for the appropriation of corporate funds, or for profits improperly received by them, they are liable only severally to account for their own receipts." Morawitz on Corporations (2d Ed.) p. 535, note; Parker v. McKenna, L. R. 10 Ch. App. 96; General Exchange Bank v. Horner, L. R. 9 Eq. Cas. 480; Woodbury Heights Land Co. v. Loudenslager (N. J.) 43 Atl. 671; Hunter v. Hunter, 50 Mo. 445; Franklin Ins. Co. v. Jenkins, 3 Wend. 130–133; People v. Equitable Life Assurance Society, supra.

A separate judgment against each of the appellants Bouker for the amount of profits actually received by him is the proper judgment to be entered in a case like the present, and would not be inconsistent with the interlocutory decree.

The judgment appealed from should therefore be modified accordingly, and as modified affirmed, without costs in this court to either party.

LAUGHLIN, J., concurs.