THE EQUITY CORPORATION, Appellant, *v.* WALLACE GROVES, Respondent.

Argued November 13, 1944; decided January 16, 1945.

*William C. Scott* and *Donald W. Smith* for appellant. I. The ten-year statute applies, since the action is peculiarly cognizable in equity and any legal remedy, if such exists at all, is wholly inadequate. (*Potter* v. *Walker*, 276 N. Y. 15; *Falk* v. *Hoffman*, 233 N. Y. 199; *McKenzie* v. *Wappler Electric Co., Inc.*, 215 App. Div. 336.) II. An accounting is necessary, since the profits exceed the correlated losses. (*Dunlop's Sons, Inc.* v. *Spurr*, 259 App. Div. 233, 285 N. Y. 333; *Potter* v. *Walker*, 276 N. Y. 15; *Goldstein* v. *Tri-Continental Corp.*, 282 N. Y. 21.) III. In equity plaintiff may trace the additional profits made by defendant through the various corporate transactions alleged. (*Frier* v. *J. W. Sales Corp.*, 261 App. Div. 388; *Fur & Wool Trading Co., Ltd.* v. *Fox, Inc.*, 245 N. Y. 215; *Coffin* v. *Shour*, 246 App. Div. 263; *Vorlander* v. *Keyes*, 1 F. 2d 67; *Goodhue Farmers' Warehouse Co.* v. *Davis*, 81 Minn. 210; *Flannery* v. *Flannery Bolt Co.*, 108 F. 2d 531, 309 U. S. 671; *Asphalt Construction Co.* v. *Bouker*, 150 App. Div. 691, 210 N. Y. 643; *Newton* v. *Porter et al.*, 69 N. Y. 133; *Bosworth* v. *Allen*, 168 N. Y. 157; *Buttles* v. *Smith*, 281 N. Y. 226.) IV. Where profits must be traced, no adequate remedy at law exists, and resort must be had to equity. (*Goldstein* v. *Tri-Continental Corp.*, 282 N. Y. 21; *Falk* v. *Hoffman*, 233 N. Y. 199; *Fur & Wool Trading Co., Ltd.* v. *Fox, Inc.*, 245 N. Y. 215; *A. S. R. Co.* v. *Fancher*, 145 N. Y. 552; *Frier* v. *J. W. Sales Corp.*, 261 App. Div. 388; *Kerber Straw Hat Corp.* v. *Lincoln*, 239 App. Div. 727, 266 N. Y. 410; *Brown* v. *Father Divine*, 173 Misc. 1029, 260 App. Div. 443; *Howland* v. *Grote*, 193 N. Y. 262; *McKenzie* v. *Wappler Electric Co., Inc.*, 215 App. Div. 336.) V. The cause of action asserted in the amended complaint may not be split up piecemeal. (*Dodds* v. *McColgan*, 229 App. Div. 273; *Lightfoot* v. *Davis*, 198 N. Y. 261.)

*F. W. H. Adams, Abraham N. Geller* and *Bernard A. Saslow* for respondent. I. So far as the amended complaint repeats the allegations of the original complaint it is clearly barred by the six-year Statute of Limitations. (*Dunlop's Sons, Inc.* v. *Spurr*, 259 App. Div. 233, 285 N. Y. 333; *Frank* v. *Carlisle*, 261 App. Div. 13, 286 N. Y. 586; *Goldstein* v. *Tri-Continental Corp.*,

282 N. Y. 21; *Singer* v. *Carlisle*, 26 N. Y. S. 2d 172, 261 App. Div. 897, 285 N. Y. 862.)   II. Even if the plaintiff were entitled to attempt to " trace a fund " for the recovery of which it had a complete remedy at law for money had and received, it would seem axiomatic that the right to trace the fund would be lost when the Statute of Limitations had barred the right to recover the original fund sought to be traced and out of which the right to trace stemmed.   (*Kalmanash* v. *Smith*, 291 N. Y. 142; *Frank* v. *Carlisle*, 261 App. Div. 13, 286 N. Y. 586; *Corash* v. *Texas Co.*, 264 App. Div. 292; *Hann* v. *Culver*, 73 Hun 109; *Hart* v. *Goadby*, 72 Misc. 232; *Kellogg* v. *Kellogg*, 169 App. Div. 395, 224 N. Y. 597; *Mills* v. *Mills*, 115 N. Y. 80; *Harriss* v. *Tams*, 258 N. Y. 229; *Hifler* v. *Calmac Oil & Gas Corp.*, 258 App. Div. 78; *Potter* v. *Walker*, 276 N. Y. 15; *Druckerman* v. *Harbord*, 31 N. Y. S. 2d 867; *Teich* v. *Lawrence*, 291 N. Y. 245; *Hastings* v. *Byllesby & Co.* [*Haystone*], 293 N. Y. 404.)

LEHMAN, Ch. J.   In the first seventeen paragraphs of the amended complaint, plaintiff sets forth a series of alleged acts by the defendant which " constituted part of a plan and scheme on his part to defraud Chain and General and to make large, illegal and secret profits by the improper and illegal use of the money of said corporation and at the expense of said corporation, all in violation of his fiduciary duty to said corporation and its stockholders and in oppression of said corporation." These acts, it is said, were carried out by domination and control of a majority of the directors of " Chain and General " and of " Interstate," two corporations later merged in the plaintiff, which the defendant could exert through his ownership of the corporate stock.   The successful culmination of these alleged wrongful acts was the sale to Chain and General, on November 4, 1931, of stock of Interstate, " resulting in a profit to defendant of $361,258.50 " at the expense of Chain and General.

The defendant does not challenge the sufficiency of these allegations to constitute a cause of action for an accounting of the profits thus made by him, but since the profit to the defendant does not exceed the correlated loss suffered by the corporation and the plaintiff knows the amount of the profits even in advance of an accounting and has stated their amount in the complaint, the six-year Statute of Limitations must be applied to an action

to recover such profits (*Dunlop's Sons, Inc.*, v. *Spurr*, 285 N. Y. 333) and would bar recovery in this action more than six years thereafter. The plaintiff does not contend otherwise, but in succeeding paragraphs contained in the amended complaint the plaintiff has alleged that thereafter the defendant " used the funds representing the profits accruing to him by reason of said sale, or a large part thereof, to purchase a large block of the Common Stock of Yosemite Holding Corporation "; that the stock so purchased was thereafter exchanged for stock of the plaintiff, and that " in or about May of 1933 the defendant caused his said stock of the plaintiff, or a large portion of it, to be sold, by reason of which defendant realized large profits." It is to be noted that the complaint does not allege that the transaction in Yosemite Holding Corporation stock was wrongful or had any connection with the earlier transaction consummated in November, 1933, except that the profits resulting from the later transaction were made by the defendant upon the resale to a third party of stock bought by the defendant from a third party by the use of " funds representing the profits " accruing from the earlier wrongful transaction or a " large part thereof." If upon equitable principles the defendant must account to the plaintiff for profits he derived through the later transaction as well as the profits derived by him " at the expense " of Chain and General through sale of Interstate stock obtained with intent to sell to Chain and General, then resort to equity would be necessary to obtain adequate relief and the ten-year limitation provided by section 53 of the Civil Practice Act, would apply. Chapter 851 of the Laws of 1942 adding a new subdivision to section 48 of the Civil Practice Act, of course does not affect this action, previously commenced.

Directors of a corporation and in some cases stockholders who dominate and control a corporation, occupy a " position of partial trust " (4 Pomeroy's Equity Jurisdiction [5th ed.], § 1090). Their relation to the corporation is fiduciary in character and they may be held accountable in equity for detriment to the corporation caused by their breach of the fiduciary obligation arising from that relationship and for profits resulting to them from such breach. Allegation and proof that the loss of the corporation, or the profit of the unfaithful fiduciary, resulted from his wrongful use of a fund subject to a trust, either express

or constructive, which may be followed in spite of changes of form, is not an element of a cause of action for such an accounting. That cause of action exists even where the delinquent fiduciary has never received any corporate property or moneys which by the use of a legal fiction might be treated as a trust fund.

This court speaking through CARDOZO, J., has said: " A constructive trust is the formula through which the conscience of equity finds expression." (*Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380, 386.) " A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. * * * An express trust arises because the parties intended to create it. A constructive trust is not based upon the intention of the parties but is imposed in order to prevent one of them from being unjustly enriched at the expense of another." (3 Scott on Trusts, § 462.1.) It is analogous to a " quasi contractual obligation " and indeed the subject is treated by the American Law Institute " in a separate restatement " in connection with the subject of Quasi Contracts rather than in connection with the Restatement of the Law of Trusts. (See Scott, *op cit.*, § 461, Restatement of the Law of Restitution, § 205, *et seq.*) Multifarious are the circumstances which may call for the imposition of a constructive trust. Some of the cases in which it has been imposed by the courts of this State are cited in the opinion of Judge THACHER and it may readily be conceded, if the complaint had alleged, that the defendant did not pay back money which the defendant wrongfully constrained Interstate to loan to him, or that he sold to a third party the stock which it is alleged the defendant purchased with intent to resell to Chain and General at a profit, the power of a court of equity to impress a trust upon the money or stock and the proceeds of such money or stock might, in proper case, be invoked in order to obtain adequate relief. (*Harrison* v. *Egan*, 270 N. Y. 387.)

It is, however, undisputed that the moneys borrowed have been returned by the defendant to the corporate treasury and the stock purchased with intent to sell it to Chain and General has been transferred to that corporation at a profit. Where a trustee in breach of trust transfers a trust fund to a third

party the wronged beneficiary may reach " the product of the property in the hands of the trustee. This right to follow property into its product * * * is not limited to cases of express trusts. The principle is a broad one. It is applicable not only where the wrongdoer is an express trustee, not only where he is a fiduciary, but whenever a person wrongfully transfers property in which another has the beneficial interest, whether legal or equitable, and receives other property in exchange therefor." (3 Scott, *op. cit.*, § 507.)

The problem here presented is whether in accordance with that principle equity will impose a trust not only on money wrongfully borrowed by the defendant and upon stock purchased with intent to resell to Chain and General, but upon profits derived thereafter by the defendant from a sale to a third party of stock purchased from a third party by the use of profits made upon the earlier sale to Chain and General.

There seems to be no difference of opinion in this court that the profits derived from the later transaction are not proceeds of the moneys borrowed wrongfully by this defendant. As Judge THACHER in his opinion points out that loan is important in this case, if at all, only as it shows the unconscionable means by which the defendant was enabled to make a profit by the purchase of stock with intent to resell to a corporation which he dominated and controlled. If the defendant bought the stock, as alleged, then the corporation to which he intended to resell the stock might insist that the title so acquired was held by the defendant for its benefit. " He was under duty, on request of the corporation, to transfer the property to the corporation at cost." The stock would be held by him under a constructive trust to carry out that duty and " he could not rid himself of this trust " by transfer of the stock to another. (*N. Y. Trust Co.* v. *American Realty Co.*, 244 N. Y. 209, 219.) Nor could he rid himself of that duty by transfer at a profit to the corporation to which he was under a duty to transfer it at cost. For the profit thus wrongfully exacted he was bound to account, as any other fiduciary would be compelled to account for profits gained by breach of his obligation, though obviously after the transfer of the stock to the corporation for whose benefit the stock had been held in trust, the trust itself

was otherwise at an end. The defendant does not challenge the right of the plaintiff to recover the profit obtained by a sale of the stock at more than cost, but no resort to equity is necessary for such recovery. The ten-year statute applies only if the corporation is entitled to recover not only the profits derived by the delinquent fiduciary from his breach of trust, but also the profits derived by the delinquent trustee from subsequent transactions in which the fiduciary used the ill-gained profits.

In every case which has been cited as authority to sustain such recovery the defendant has in breach of his trust — express or constructive — disposed of property belonging to another, or in which that other had a beneficial interest and consequently he could no longer convey that property to the beneficial owner. Only in such case has equity permitted the beneficiary to follow the trust property into other property for which it has been exchanged and if the property received in exchange thereafter increases in value the beneficiary in such case is entitled to the benefit. Here the beneficiary must concededly return profits which he made by breach of his fiduciary obligation. In no cited case has the beneficiary of a trust, express or constructive, been permitted to recover also the profits made by the fiduciary through use of such profits in other transactions and the principle upon which it has been held that a wronged beneficiary may reach the product of a trust fund does not justify such recovery. Accountability of the fiduciary has always been limited to the " *direct* product which he receives from the property." (See Restatement of the Law of Restitution, § 205.) (Italics are new.)

If the court should now decide that the defendant is accountable for the profits derived from the sale of securities purchased out of the profits the defendant derived from dealings with the corporation in which the defendant had breached his fiduciary obligation, then we must in effect discard the rule recently formulated in *Dunlop's Sons, Inc.*, v. *Spurr* (285 N. Y. 333, *supra*) and must hold that in every case the ten-year statute applies. True, in the cited case the complaint did not contain the allegations, which are contained in the complaint we are now considering, that the profits obtained by the defendant at the expense of the corporation in the transaction in which the defendant violated his fiduciary obligation were there-

after invested in other securities, and that additional profits were made by the subsequent sale of such securities. No valid distinction can, we think, be based on that difference. In each case the corporate plaintiff seeks and is entitled to recover from the defendant *all* the profits derived by the defendant in violation of his duty to the corporation and in each case the question presented is whether an accounting in equity is necessary in order that the plaintiff may recover *all* such profits. In each case, too, the complaint shows that the gains derived by the defendant from the *transaction in which he violated his duty* " do not exceed the correlated losses suffered by the corporation." (*Dunlop's Sons, Inc.,* v. *Spurr,* 285 N. Y. 333, 336.) An accounting in equity is necessary for complete relief in cases in which the amount of the gains which the corporation may recover may exceed the " correlated losses suffered by the corporation " in an amount which can be determined only upon an accounting. If, as now contended, those gains may include not only the profits derived by the fiduciary in violation of his duty, but also the gains which the fiduciary may derive from subsequent sale of securities purchased " by the use of the funds representing the profits " accruing to him as the result of his earlier wrong, then it is difficult to conceive of a case where it can be said that the six-year statute would apply because no accounting in equity is necessary to enable the plaintiff to recover all the profits to which it may be entitled. The possibility always exists that the original profits may have been used to purchase securities which have increased in value or have been sold at a profit. Without an accounting the corporation might not be able to find out whether the original profits have been reinvested profitably. That might occur even after the action is brought, and if the plaintiff is entitled to the benefit of a profitable reinvestment, it seems to us that it cannot lose its rights by failure to plead that the defendant has or may have made such reinvestment. Thus, no valid distinction can be based upon the fact that in this case the profitable reinvestment has been pleaded. See, also, *Hastings* v. *Byllesby & Co.* (*Haystone*) (293 N. Y. 404) in which this court rejected the claim that the corporation was entitled to recover profits made upon a resale of securities purchased from the corporation, though in that case, as in the instant case, such profitable resale was pleaded.

The judgment should be affirmed, with costs.

THACHER, J. (dissenting). This is an appeal by the plaintiff from a nonunanimous judgment of the Appellate Division affirming an order at Special Term dismissing the complaint on motion on the ground that the action was barred by the six-year Statute of Limitations. If under the allegations of the amended complaint plaintiff is not entitled to recover any amount in excess of losses recoverable in an action at law, then the decision below is correct and must be affirmed (*Dunlop's Sons, Inc.,* v. *Spurr,* 285 N. Y. 333), but if in equity the plaintiff is entitled to recover gains in excess of the correlated losses recoverable at law, then the ten-year Statute of Limitations applies. (*Goldstein* v. *Tri-Continental Corp.,* 282 N. Y. 21; *Potter* v. *Walker,* 276 N. Y. 15; *Hastings* v. *Byllesby & Co.* [*Haystone*], 293 N. Y. 404, 412.)

According to the allegations, the plaintiff corporation (hereinafter sometimes called " Equity ") succeeded by merger to all the rights, privileges, powers and franchises and all property, real, personal and mixed, of Interstate Equities Corporation (hereinafter called " Interstate ") and Chain & General Equities (hereinafter called " Chain & General "). Before the merger the defendant, Groves, entered into a contract with Chain & General to underwrite 500,000 shares of its common stock at a price of $2 per share, provided he could obtain 51% of the total number of such shares outstanding and entitled to vote. He then made arrangements and executed a contract with an investment banking corporation to purchase from said corporation 542,517 shares of the common stock of Interstate at a price of $1.50 per share, or a total of $813,775.50, agreeing to pay the purchase price in installments, and also entered into a contract to purchase from an individual 100,000 shares of said common stock at the same price, on which he made a down payment of $5,000 and paid the balance of $145,000 thereafter. By virtue of these agreements he obtained voting control of Interstate and control of its board of directors, intending, at the time he purchased or agreed to purchase the 642,517 shares of Interstate, to resell the same to Chain & General at a profit to himself immediately upon obtaining complete control of the board of directors of Chain & General through the election of his nominees and agents by its board of directors. He was elected to the board of directors of Chain & General on October 16, 1931,

and continued to act as such director until the year 1933, with the exception of a brief interval of a few moments, hereafter referred to, and between September 23, 1931, and November 4, 1931, by reason of his underwriting contract with Chain & General, was able to and did elect his nominees and agents as a majority of the board of Chain & General, thus acquiring complete control and domination of said board. On or about November 4, 1931, the defendant, through his ownership of a majority of the voting stock of Interstate and his domination and control of a majority of its directors, fraudulently caused Interstate to make him a loan of $1,000,000, with which money he fulfilled his underwriting agreement with Chain & General and took down and purchased 467,938 shares of its common stock, which amounted to more than a majority of the voting stock of that corporation issued and outstanding, thereby obtaining complete domination and control of the board of directors of Chain & General by causing his nominees and agents to be elected to its board, who together with his nominees and agents previously elected constituted a large majority of the board. Thereupon he fraudulently caused Chain & General to purchase from him his 642,517 shares of the common stock of Interstate for the sum of $1,325,034, having purchased these shares within the preceding month for the sum of $963,775.50, thus realizing a profit to himself of $361,258.50.

At the meeting of the board of directors of Chain & General at which this purchase from the defendant was authorized and approved, and immediately prior to said authorization and approval, defendant by means of his domination and control of said board of directors caused said board to accept his resignation as a director of Chain & General, and immediately after the board, acting under his domination, had authorized and approved the purchase from himself of his Interstate stock, the defendant, at the same meeting, by means of his control and domination caused the board to re-elect him a director of Chain & General, whereupon he took his seat as before and participated in the meeting.

The plaintiff Equity brings this suit in the right of Chain & General, its constituent company, and alleges that all of these acts of the defendant constituted a plan and scheme on his part to defraud Chain & General and to make large, illegal and secret

profits by the improper and illegal use of the money of said corporation and at the expense of said corporation, all in violation of his fiduciary duty to said corporation and its stockholders and in oppression of said corporation.

If the complaint stopped there, the action would be barred by the rule in the *Dunlop* case (*supra*), no basis for recovery in excess of the secret profit of $361,258.50 obtained by the defendant from Chain & General being affirmatively shown. But according to additional allegations of the complaint the defendant used this illicit profit, acquired in breach of his fiduciary duties to Chain & General, to acquire a large block of the common stock of Yosemite Holding Corporation (hereinafter called " Yosemite "), another investment company, and in or about December, 1932, together with certain other persons, caused Equity to be organized and certain of its stock to be exchanged for all or substantially all of the common stock of Yosemite which he had theretofore purchased with the funds procured, in violation of his fiduciary obligations, from Chain & General. He has, it is alleged, since sold the stock in the plaintiff corporation thus acquired at a profit.

Upon these allegations Equity contends that the defendant is accountable not merely for the profit of $361,258.50 realized upon the sale of his Interstate stock to Chain & General, but, as a constructive trustee of this money, title to which was received by him in violation of his fiduciary duties to Chain & General, that these funds thus impressed with a constructive trust may be traced into the stock of Equity acquired in exchange for the Yosemite stock purchased by him with trust funds, and, further, that the Equity shares having been sold at a profit, the plaintiff is entitled to an accounting for whatever was received by the defendant upon the sale of these shares.

The briefs for the appellant concede that the Interstate loan to the defendant was repaid with interest, but the fraudulent character of this loan, subsequently repaid, is in no sense essential to the plaintiff's right to an accounting in equity and is unimportant in this lawsuit except insofar as it shows the unconscionable means by which the defendant contrived to procure control and domination of Chain & General and thus, in violation of fiduciary obligations, to sell to it the common stock of Interstate which he had purchased to resell to it at a profit.

The right to follow the funds thus acquired springs from the fiduciary nature of the defendant's relation to these moneys acquired in breach of his fiduciary duties. (*Holmes* v. *Gilman,* 138 N. Y. 369, 377; *In re Hallett's Estate,* L. R., 13 Ch. D. 696.) Equitable rights and remedies arise whenever a fiduciary relationship is abused, and if by such abuse the legal title to property is acquired equity intervenes to declare the wrongdoers trustees. The trust with its incidents is the foundation of the equitable remedy. (*Falk* v. *Hoffman,* 233 N. Y. 199, 201; *Lightfoot* v. *Davis,* 198 N. Y. 261; *Newton* v. *Porter et al.,* 69 N. Y. 133.)

Although a director is not a trustee in a strict sense, his relation to his corporation is fiduciary and he is accountable as a constructive trustee for property obtained from the corporation in derogation of his duties as a director. (*Bosworth* v. *Allen,* 168 N. Y. 157; *Lightfoot* v. *Davis, supra,* at p. 274; *Asphalt Construction Co.* v. *Bouker,* 150 App. Div. 691, affd. 210 N. Y. 643; *Parker* v. *McKenna,* 10 Ch. 96.) The complaint plainly states that Groves bought the stock with intention to resell to the corporation. Having so bought, he held the stock in trust for Chain & General. He could not rid himself of this trust by negotiating a sale, at a profit to himself of $361,258.50, to the corporation which he dominated and to which he is accountable as a constructive trustee. (*N. Y. Trust Co.* v. *American Realty Co.,* 244 N. Y. 209, 219.) He has not made distribution or accounted for anything.

In equity the device of a constructive trust is not confined in its use to strictly trust relationships. It is applied, with all its incidents, where by virtue of a fiduciary relationship one has obtained property in derogation of his duties as partner (*Holmes* v. *Gilman, supra*), joint adventurer (*Meinhard* v. *Salmon,* 249 N. Y. 458), agent (*Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380), bailee (*In re Hallett's Estate, supra*), attorney (*Matter of Will of O'Hara,* 95 N. Y. 403), parent (*Wood* v. *Rabe et al.,* 96 N. Y. 414), child (*Harrington* v. *Schiller,* 231 N. Y. 278), or wife (*Ahrens* v. *Jones,* 169 N. Y. 555). As Chief Judge Cardozo so well said in *Meinhard* v. *Salmon* (*supra,* p. 467), "Equity refuses to confine within the bounds of classified transactions its precept of a loyalty that is undivided and unselfish. * * * A constructive trust is then the remedial

device through which preference of self is made subordinate to loyalty to others. * * * Many and varied are its phases and occasions."

In a leading English case (*In re Hallett's Estate, supra*), decided in 1879, Sir George Jessel said: "* * * it must now be considered settled that there is no distinction, and never was a distinction, between a person occupying one fiduciary position or another fiduciary position as to the right of the beneficial owner to follow the trust fund, and that those cases which have been cited at Law so far from establishing a distinction, establish the contrary; * * *."

In *Holmes* v. *Gilman* (*supra*), we held that, although partners do not in the strict sense of the term occupy the position of trustees towards each other and towards the firm funds, yet the position is one of a fiduciary nature, calling for the maintenance and exercise of the greatest good faith between them, and that such a relationship authorizes the same remedy on behalf of the wronged partner as would exist against a trustee, so called, on behalf of a *cestui que trust,* citing Jessel, M. R., *In re Hallett's Estate (supra).* In that case it was stated the partner could not embezzle partnership funds, but we held that the right to follow the funds sprang from the fiduciary nature of his relation to them. There is neither reason nor authority to support the contention that the same remedy of tracing trust funds applicable to trusts in the strict sense does not apply to property the title to which has been obtained through the breach of fiduciary obligations by a corporation officer, director and controlling stockholder.

Upon the allegations of the amended complaint the funds received from the treasury of Chain & General in excess of the price paid for the stock by Groves are clearly traceable into the shares of Yosemite for the purchase of which the funds were used and into the Equity shares for which the Yosemite shares were exchanged. It appearing that the defendant has disposed of the Equity shares, the question arises whether the plaintiff is now entitled upon an accounting in equity to the proceeds of the sale of such shares. We need not pause to examine the question of rescission. (*N. Y. Trust Co.* v. *American Realty Co., supra; Harrison* v. *Egan,* 270 N. Y. 387.) That the plaintiff has an election to recover upon such an

accounting the amount so received by the defendant, or to claim its actual loss, whichever is the greater, is clear. (*Harrison* v. *Egan, supra;* see, also, 3 Scott on Trusts, § 508, p. 2433.)

Plaintiff having the right to recover the amount for which defendant sold the Equity-shares, and it being alleged that the defendant made profits upon the sale of these shares, the plaintiff, if it supports its allegations by proof, will be entitled to recover upon the accounting an amount in excess of the amount recoverable at law. Accordingly, the ten-year Statute of Limitations applies.

The judgments should be reversed and the motion to dismiss the complaint denied, with costs in all courts.

LOUGHRAN, LEWIS and DESMOND, JJ., concur with LEHMAN, Ch. J.; THACHER, J., dissents in opinion in which CONWAY, J., concurs.

Judgment affirmed.