## MARCUS v. OTIS et al.

Civ. 28–455.

United States District Court
S. D. New York.

March 16, 1949.

Abraham Marcus and Louis A. Dreyer, both of New York City, for plaintiff.

Smigel & Miller and Samuel Marion, all of New York City, for plaintiff intervenor.

894

Spence, Hotchkiss, Parker & Duryea, of New York City, for defendants Otis and others.

Robert E. Connolley, of New York City, and Kent Meyers, of Cleveland, Ohio, for defendant Kuth.

C. L. Sylvester and S. G. Kingsley, both of New York City, for defendant E. A. Tracey and others.

Alexander & Green and C. W. Sorrell, both of New York City, for British Type Investors and others.

RIFKIND, District Judge.

This stockholder's derivative suit has had a long and involved history. On appeal by plaintiffs-intervenors from a judgment approving a proposed agreement of compromise, the Court of Appeals reversed and remanded for trial. It declared the amount to be paid inadequate because under both New York and Delaware law, on the evidence then before the court, the defendants were prima facie liable for conversion of shares of stock owned by the beneficiary corporation. The measure of damages, it held, was the highest intermediate value of the stock from the time of its conversion up to a reasonable time after the discovery of the wrong. By this measure, the prospective recovery was far greater than the compromise offer.[1]

The trial resulted in a judgment for the beneficiary corporation in the amount of $608,887.50, but on appeal the Court of Appeals held that the defendants had converted not stock but money, that they had employed the money to purchase shares of stock from a third party, and that they were accountable only for the sum converted, with interest (which they have repaid) plus any profits they gained by their wrong.[2] The judgment was reversed and the cause was "remanded for further proceedings in accordance with the foregoing opinion." On rehearing,[3] the Court of Appeals held to this view and clarified subsidiary rulings concerning the method of calculating damages with respect to certain defendants.

Under the mandate of the Court of Appeals, the case is now before me for the sole purpose, as all parties but the plaintiffs-intervenors agree, of assessing damages in accordance with its opinion. The intervenors insist that a new trial of the whole cause may and should be had; or, at least, that they may offer proof that the defendants deprived the corporation of, and seized for themselves, a corporate opportunity, for which they are liable.

██ While it is true that on remand a district judge may render any judgment which he thinks consistent with the opinion of the appellate court, it is equally true that when the merits of a case have been decided by the appellate court, the inferior court has no authority to grant a new trial or to reconsider any question decided above. Cf. In re Potts, 1897, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994. Pioneer Import Corporation v. The Lafcomo, 2 Cir., 1947, 159 F.2d 654, certiorari denied Black Diamond Lines v. Pioneer Import Corp., 1947, 321 U.S. 766, 64 S.Ct. 523, 88 L.Ed. 1063.

Here the only question not decided on appeal was the amount of damages. That question alone remains open before this court. The motion of the intervening plaintiffs for a trial de novo is denied.

The Court of Appeals directs that defendants' profits be calculated as the difference between the price at which the defendants bought their shares ($1.20 per share) and the actual price for which they sold them; unsold shares are to be taken into account in computing net profit or loss, the present value of any unsold shares still held by a defendant to be treated as the sale price of those shares in making this calculation; interest on profits is to be denied. Since the retained shares have now been sold, their sale price will be used in computation. In the case of defendant Mrs. Marie L. Tracey, $2.25 per share is to be substituted for the actual sale price of

---

[1] Upson v. Otis, 2 Cir., 1946, 155 F.2d 606.

[2] Marcus v. Otis, 2 Cir., 1948, 168 F.2d 649.

[3] Marcus v. Otis, 2 Cir., 1948, 169 F.2d 148.

30,000 of her shares, and the average sale price of all her shares is to be substituted for the actual sale price of 41,500 shares.

■ Whether "profits on profits" are recoverable is not quite so clear. To illustrate: defendant Hutchinson sold his shares and realized a profit of $3,219.85 which he reinvested in other securities. Upon sale of the latter, he realized a profit of $318.66. Plaintiffs-intervenors support their claim to this additional amount by reference to language in the opinion of the Court of Appeals on rehearing,[4] where the question was neither briefed nor argued. That "profits on profits" are not recoverable in such cases is the law of New York.

Equity Corp. v. Groves, 1945, 294 N.Y. 8, 60 N.E.2d 19. Neither the Court of Appeals nor any party hereto has suggested that this differs from any other law and if so, what other law, if any, may apply; whether Delaware law was used to fix the director's fiduciary obligations;[5] and if so, whether it, or the lex loci, or the lex fori is now to be determinative of the measure of damage for their breach. But since independent search has disclosed neither cases nor extra-judicial authorities in disagreement with the New York rule, that rule is accepted and "profits on profits" will be denied. Cf. Restatement of Restitution § 205; § 157, comment b.

■ The profits realized by the several defendants are found to be as follows:

1. Edward V. Otis—$10,027.25.

| | |
|---|---|
| 6500 shares sold for | $21,537.30 |
| 3500 " " " | 489.95 |
| | 22,027.25 |
| less cost of 10,000 shares | 12,000.00 |
| | $10,027.25 |

2. Curtis Franklin—$9131.73

| | |
|---|---|
| 9000 shares sold for | $20,991.78 |
| 1000 " " " | 139.95 |
| | 21,131.73 |
| less cost of 10,000 shares | 12,000.00 |
| | $ 9,131.73 |

Plaintiffs-intervenors argue that Franklin sold 1,000 shares of the same stock, which he had acquired elsewhere, together with the 9,000 shares above mentioned, and that their proceeds, $2,332.42, rather than the $139.95 above, should be employed in calculating his profit. However, the only profits for which recovery may be had are those which the defendant made from the use of the money he unlawfully converted. The money Franklin converted he used to buy 10,000 shares which have been identified with particularity. The profit on the sale of those shares, and those alone, is here involved. Where the particular shares sold cannot be identified, as in the case of defendant Mrs. Tracey, an average sale price is of necessity employed. Where the specific property is traced, no reason is suggested why other property should be followed.

3. William Hutchinson—$3,219.85

| | |
|---|---|
| 3000 shares sold for | $6819.85 |
| Less cost of shares | 3600.00 |
| | $3219.85 |

Plaintiffs-intervenors claim an additional $338.60, constituting the profit which I find this defendant to have made from reinvestment of the above profit of $3,219.85. For reasons heretofore stated, this "profit on profit" is not recoverable.

---

[4] "The final point to be considered is that of interest which the plaintiffs claim should be allowed upon the profits. We, however, do not believe that such interest should be awarded in this case. There can be no doubt that the defendants as part of their net profits are bound to account for any dividends received by them on the Majestic stock and also for any other gains and income they may actually have realized through reinvestment or otherwise. However, upon funds from which they received no provable gain in our opinion the court should not award interest. * * *" 169 F.2d at page 150.

[5] Cf. Upson v. Otis, 1946, 155 F.2d 606, 607, 611, proceeding upon the assumption that there are no substantial differences between New York and Delaware law with respect either to the nature of the wrong or the measure of damage.

4. Byron D. Kuth—$3,414.70

| | |
|---|---|
| profit on 1300 shares | $2394.70 |
| " " 1700 " | 1020.00 |
| | $3414.70 |

■ In arriving at the profit of $1,020 on 1,700 shares, their sale price is calculated at $1.80 per share, though in fact Kuth received but $1.20 per share, their cost price to him. Those shares Kuth sold, immediately he agreed to participate in the stock purchase scheme, to two business associates, at cost price, though at the time the market price was $1.80. Had Kuth sold at market price, he would be accountable for the difference between $1.80 and $1.20. In effect he made a gift to his associates of the difference, not in cash, as he could have done by first selling the shares at the market, but in almost equally realizable form. I do not see how he can immunize himself from accountability merely by omitting the intermediate step of first selling the stock on the market. To permit Kuth thus to avoid liability would open too convenient an escape route for directors dubious of the legality of their participation in stock purchase schemes. Because analogies drawn from decisions under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b), are inappropriate, cf. Marcus v. Otis, 2 Cir., 169 F.2d 148, 150, the inapplicability under that Section of the measure of liability here imposed is not persuasive. Cf. Shaw v. Dreyfus, 2 Cir., 172 F.2d 140, affirming D.C.S.D.N.Y., 1948, 79 F.Supp. 533.

5. Mrs. Marie L. Tracey—$100,981.61

| | |
|---|---|
| profit on 30,000 shares | $31,500.00 |
| " " 36,500 " | 66,481.61 |
| " " 5,000 " | 3,000.00 |
| | $100,981.61 |

These profits have been calculated as directed by the Court of Appeals, except that with respect to 5,000 shares sold by Mrs. Tracey to Mrs. Van Meter at cost, $1.20 per share, at a time when the market price was at least $1.80 per share, Mrs. Tracey is being held accountable for a profit of 60¢ per share, for the same reasons that Kuth has been held liable for that amount with respect to the 1,700 shares he sold his associates. The imposition of liability for this additional sum upon Mrs. Tracey is not precluded by the Court of Appeals' direction as to the calculation of her liability because this question was not brought to that court's attention by anything in the briefs on appeal and is not adverted to in its opinion. All parties hereto have regarded the issue as one open for my consideration upon this remand.

6. William R. Harrison.

■ This defendant made no profit on the shares he bought, and plaintiff elects, therefore, not to impose a constructive trust on them or their proceeds. Plaintiffs-intervenors claim the profit of $3,562.50 made by Harrison on the sale of 2,500 shares which he acquired otherwise than as a part of the transactions complained of. This claim was made to the Court of Appeals on rehearing, and ignored in its opinion. I reject it for the same reasons given for the rejection of a similar claim made against defendant Franklin.

The Court of Appeals has further held that each defendant except Mrs. Tracey is secondarily liable for the judgment indebtedness of all defendants.

Judgment should therefore be entered against each defendant in favor of the beneficiary corporation as follows:

1. Edward V. Otis—$10,027.25
2. Curtis Franklin—$9,131.73
3. William Hutchinson—$3,219.85
4. Byron D. Kuth—$3,414.70
5. Marie L. Tracey—$100,981.61

Judgment should provide that defendants Edward V. Otis, Curtis Franklin, William Hutchinson, and Byron D. Kuth each be secondarily liable for the amounts due from all of them and from Marie L. Tracey. Judgment should further provide that this court retains jurisdiction for the purpose of receiving applications for, and determining the amounts to be allowed out of the recovery for the benefit of the beneficiary corporation, for the payment of the disbursements and expenses paid or incurred on behalf of plaintiff and plaintiffs-intervenors and for the reasonable value of the services rendered by their respective attorneys.