[Civ. No. 23759.   Second Dist., Div. Two.   Sept. 28, 1959.]

LLOYD TEVIS, Respondent, v. MORRIS BEIGEL et al.,
Appellants.

92

Abe Richman and Sidney J. Unickel for Appellants.

Glickfeld & Goldstein for Respondent.

HERNDON, J.—This is the second time this cause has been before us. In *Tevis* v. *Beigel*, 156 Cal.App.2d 8 [319 P.2d 98], we reversed a judgment of nonsuit which terminated the first trial of the action. The second trial resulted in a

money judgment against defendants Morris Beigel and Cecil Sills and in favor of plaintiff in his capacity as assignee for the benefit of creditors of Midway Foundry of Gardena, Inc. The recovery is for "secret profits" which, according to the findings of the trial court, were derived by defendants from the partial performance of an admittedly invalid contract made between said corporation and a partnership of which Beigel was a member at a time when Beigel was an officer and a director of the corporation. Defendants appeal from said judgment.

In 1952 the corporation, hereinafter referred to as "Midway," was engaged in the manufacture and sale of cast iron soil fittings. Beigel and Sills, his son-in-law, and one Paul Snyder were also partners in a wholesale plumbing supply business known as Universal Supply Company of California. On September 6, 1952, the date of execution of the invalid contract, Beigel was president and a director of Midway and owned 37½ per cent of the stock of the corporation. Snyder, one of the partners in the plumbing supply business, owned 37½ per cent of the stock in Midway, and the remaining 25 per cent of the stock was owned by one Lopez.

From the terms of the September 6th agreement, a copy of which was incorporated into plaintiff's original complaint, it would appear that Snyder exchanged his interest in the plumbing supply business for Beigel's interest in Midway, so that if the contract were carried out, Snyder would own 75 per cent of the stock of Midway. By this contract the corporation agreed to supply the Beigel-Sills partnership with merchandise at prices therein specified. Between September 6, 1952, and May 14, 1953, Midway sold substantial quantities of merchandise to defendant pursuant to the terms of said agreement. These sales totaled approximately $90,000 and constituted almost one-fourth of Midway's gross sales during the period in question.

However, on May 19, 1953, Midway notified defendants in writing that it would no longer supply merchandise to them pursuant to the September 6th contract. Shortly thereafter Beigel and Sills instituted an action against Midway for declaratory relief seeking a determination of their rights under the contract. In that suit, Midway set up as an affirmative defense that the contract was invalid because of non-compliance with the provisions of section 820 of the Corpora-

tions Code.[1] Upon the trial of that case in July, 1953, the court nonsuited the plaintiffs (defendants here) and ruled in an oral opinion that the contract was invalid because of failure to comply with section 820, making no order that the nonsuit should not operate as a judgment on the merits.

Shortly thereafter, in October, 1953, Midway instituted the present action seeking the recovery of $16,961.79, as the difference between the then current market prices of the merchandise the corporation had sold defendants and the prices actually paid by them. The corporation fell into financial difficulties and about six months later made an assignment for the benefit of creditors and respondent Lloyd Tevis, the assignee, was substituted as plaintiff in this action. It does not appear, nor is it apparently contended, that plaintiff Tevis stands in any better position than the corporation stood with respect to the enforcement of any rights in favor of the corporation and against appellants. The record contains no evidence of any intervening rights of creditors.

At the first trial of the action plaintiff's counsel attempted to introduce into evidence a certified copy of the reporter's transcript of the earlier trial which contained the oral opinion mentioned above. The trial court refused its introduction into evidence, and ruled that the prior judgment of nonsuit was not res judicata on the issue of the validity of the con-

---

[1]Section 820: ''DUTY TO ACT IN GOOD FAITH; EFFECT OF PERSONAL FINANCIAL INTEREST OR COMMON DIRECTORSHIP. Directors and officers shall exercise their powers in good faith, and with a view to the interests of the corporation. No contract or other transaction between a corporation and one or more of its directors, or between a corporation and any corporation, firm, or association in which one or more of its directors are directors or are financially interested, is either void or voidable because such director or directors are present at the meeting of the board of directors or a committee thereof which authorizes or approves the contract or transaction, or because his or their votes are counted for such purpose, if the circumstances specified in any of the following subdivisions exist:

''(a) The fact of the common directorship or financial interest is disclosed or known to the board of directors or committee and noted in the minutes, and the board or committee authorizes, approves, or ratifies the contract or transaction in good faith by a vote sufficient for the purpose without counting the vote or votes of such director or directors.

''(b) The fact of the common directorship or financial interest is disclosed or known to the shareholders, and they approve or ratify the contract or transaction in good faith by a majority vote or written consent of shareholders entitled to vote.

''(c) The contract or transaction is just and reasonable as to the corporation at the time it is authorized or approved.

''Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board of directors or a committee thereof which authorizes, approves, or ratifies a contract or transaction.''

tract. Plaintiff then introduced evidence tending to show that the prices at which Midway sold its plumbing supplies to defendants were lower than its prices to other customers. No evidence was introduced which showed that any goods were sold below cost. The trial court took the position that a mere reduction in price would not prove that the contract was unfair to Midway and that in order to be actionable the sales would have to be below Midway's cost. Accordingly, the court granted defendants' motion for nonsuit.

On the former appeal (*Tevis* v. *Beigel,* 156 Cal.App.2d 8 [319 P.2d 98]), we held ". . . the trial court erred when it refused to treat the judgment of nonsuit in the former action [for declaratory relief] between the parties as res judicata on the question of the validity of the contract." We further indicated, at page 15, "Once it was established that the circumstances surrounding the execution of the contract did not meet the requirements of Corporations Code, section 820, the burden shifted to the defendants to show their good faith and the fairness of the contract to the corporation." Accordingly, the judgment of nonsuit was reversed.

In the second trial (the proceeding presently under review) plaintiff introduced evidence tending to show that the prices which defendants paid under the invalid contract were substantially lower than the prices charged other customers for the same goods at or about the same time. As proof of the amount of the resulting damages plaintiff introduced in evidence a sales and price analysis prepared by a certified public accountant who testified as plaintiff's expert witness.

On this appeal, defendants contend that the trial court erroneously precluded them from proving that the directors and shareholders of Midway, after September 6, 1952, had full knowledge of, and consented to, all sales made to defendants pursuant to the invalid contract. In the course of his examination of the witness Snyder, counsel for defendants inquired "Who were the directors of the Midway Foundry of Gardena on or about the date of the execution of this assignment?" Apparently the question had reference to the date of the execution of the assignment for the benefit of creditors. Counsel for plaintiff objected to the question on the ground that it was immaterial how many shares the witness owned at that time. In the course of his argument on the objection, defendants' counsel indicated that it was his purpose to show that Snyder owned 75 per cent of the stock and controlled and dominated the corporation, and that Sny-

der, as a party to the contract and as a member of the firm which was the purchaser thereunder, was a beneficiary of the purchasers' rights under the contract no less than the defendants. The court sustained plaintiff's objection, whereupon defendants made an offer of proof the substance of which was that all of the sales to defendants made subsequent to September 6, 1952, were made with the full knowledge and acquiescence of Snyder and Lopez who dominated and controlled the corporation and owned all of its stock from that date.

The trial court sustained plaintiff's objection to the offer and upon the basis of this ruling the defendants advance their major contention on this appeal: that the trial court erroneously precluded them from establishing a good defense to the suit for ''secret profits.'' Defendants' position is that notwithstanding the invalidity of the agreement of September 6, 1952, they are not liable for any ''secret profits'' on sales to them voluntarily made with the full knowledge and consent of all the shareholders and directors of the corporation.

A director of a corporation occupies a fiduciary relationship to the corporation and its stockholders and indirectly to its creditors. (*Bainbridge* v. *Stoner,* 16 Cal.2d 423, 427-428 [106 P.2d 423] ; see 13 Cal.Jur.2d 81, § 315.) Such officer ''. . . will not be allowed to contract with the corporation, directly or indirectly, or to *sell property* to it, or *purchase property* from it, where they act both for the corporation and for themselves. In such a case the transaction is, at the least, voidable at the option of the corporation; and it may be avoided and set aside, or affirmed and any profits recovered, without proof of actual fraud, or of actual injury to the corporation.'' (*Kleinsasser* v. *McNamara,* 129 Cal.App. 49, 58 [18 P.2d 423] (emphasis added); see *Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405, 419-421 [241 P.2d 66].) In such a situation the question presented may be ''. . . (1) as to the validity or enforceability of the contract, or the right to set it aside, because of such profits, or (2) as to the right of the corporation to recover from the officer the profits so made by him in violation of his duty.'' (3 Fletcher, Cyclopedia of Corporations 269, § 884.)

In the prior appeal, *Tevis* v. *Beigel, supra,* 156 Cal.App.2d 8, we held that in an action to recover secret profits earned under the contract of September 6, 1952, the plaintiff (respondent herein) had established a prima facie case for the

recovery of such profits from defendants (appellants herein) when he established (1) that the circumstances of the execution of the contract for the sale of the merchandise to defendants did not meet the requirements of Corporations Code section 820 and (2) that the prices paid by defendants were lower than those charged to other customers. Accordingly, we reversed a judgment of nonsuit and remanded the case for further proceedings in the lower court. (*Tevis* v. *Beigel, supra,* 156 Cal.App.2d 8.) With respect to the legal issues therein decided that opinion, of course, constitutes the law of the case.

However, our former decision in no way limited the defendants' right to defend against plaintiff's suit for secret profits by proving acts or agreements of the parties subsequent to the execution of the admittedly invalid agreement of September 6, 1952. To hold that a decision reversing a judgment of nonsuit had the effect of depriving defendants of any valid defense which they properly could have made at the first trial would seem to be manifestly unjust and unreasonable.

By the terms of Corporations Code, section 820, "Directors and officers shall exercise their powers in good faith, and with a view to the interests of the corporation." That section further provides that a contract between a director and his corporation will not be invalid if there has been a disclosure and approval by the board or stockholders of the agreement with the interested director. ■ However, "[e]ven though the requirements of section 820 are technically met, transactions that are unfair and unreasonable to the corporation may be avoided. (California Corporation Laws by Ballantine and Sterling (1949 ed.), p. 102, § 84.)" (*Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405, 418 [241 P.2d 66]; *Kennerson* v. *Burbank Amusement Co.,* 120 Cal.App.2d 157, 171 [260 P.2d 823]; see 13 Cal.Jur.2d 75, § 307.)

■ The vice inherent in transactions between the director and his corporation is often thought to be the inevitable conflict between the director's fiduciary duty to his corporation and his immediate pecuniary self-interest. (See Lattin, Corporations, 257, § 12.) Such conflict necessarily develops when corporate property is sold to a director without a prior disclosure of the director's interest in the transaction. ■ If the price at which the property is sold is too low, the director obviously makes a profit at the expense of the corporation

to which he has fiduciary obligations (see *Marcus* v. *Otis,* 83 F.Supp. 893, 896) and in such a situation Corporations Code, section 820, obviously applies to permit the corporation to avoid the contract. (*Cf. Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405, 418 [241 P.2d 66]; *Kennerson* v. *Burbank Amusement Co., supra,* 120 Cal.App.2d 157, 170.)

But the existence or retention of secret profits obtained by a director by reason of a violation of the obligations incident to his fiduciary relations to the corporation is not the only basis for avoidance of a contract under Corporations Code, section 820. Unfairness of the transaction from the viewpoint of the corporation is sufficient to render an agreement voidable where an officer or director has an undisclosed personal interest. (*Cf. Pece* v. *Tama Trading Co.,* 22 Cal. App.2d 219 [70 P.2d 652]; see Ballantine & Sterling, California Corporation Laws, 102-106, § 84; and 3 Fletcher, Cyc. Corp., 371, § 931 et seq.)

Thus a suit to recover secret profits invokes a legal remedy quite different from that which is invoked in a suit to avoid an obligation for failure of the parties to comply with the requirements of disclosure and fairness enunciated in Corporations Code, section 820. (See Ballantine Corporations, 169, § 66.) The existence of such secret profits is a *sine qua non* of the former action. (*Tevis* v. *Beigel, supra,* 156 Cal.App.2d 8, 15.) Moreover, to such an action the defendant director may raise the defenses of express ratification, laches, or acquiescence subsequent to the execution of the agreement. (*Miller* v. *Ortman,* 235 Ind. 641 [136 N.E.2d 17, 39-40]; see 13 Cal.Jur.2d 92, § 322.) Such defenses are available because the beneficiaries of an involuntary trust may voluntarily divest themselves of their rights, or, by their conduct, they may estop themselves from asserting such rights. (*Brainard* v. *De La Montanya,* 18 Cal.2d 502, 510 [116 P.2d 66]; see 4 Scott, Trusts (2d ed., 1956) 3150, § 481 et seq.)

*Brainard* v. *De La Montanya, supra,* 18 Cal.2d 502, 510, was an action by a trustee in bankruptcy of an insolvent corporation against the defendant director involving three separate transactions in which the director dealt with the corporation without formal authorization of the board of directors. It was claimed that in each of the transactions the director had dealt personally with or through the corporation to his own financial advantage. The trial court rendered judgment in favor of the director holding that while a

director stands in a fiduciary relationship to the corporation, the directors and shareholders are the only beneficiaries of the trust so that unless a fraud upon creditors has been perpetrated there can be no valid complaint concerning a transaction which has been carried out with the full knowledge and consent of all of the directors and shareholders.

In affirming this judgment, the Supreme Court, after noting that in each instance the corporation involved was essentially a "closed corporation" through which three men transacted a portion of their business and that there were no directors or stockholders other than said three men during any of the times in question, stated:

"Numerous authorities are cited in 6A California Jurisprudence at page 1112 in support of the proposition that 'In accord with the general fiduciary duties and relationship which a director bears, an officer is not precluded from dealing directly with the corporation of which he is a director, although any transaction between them is subject to rigid scrutiny and is voidable for any violation of his duty as trustee, but is not absolutely void.' And it has been further held that where the consenting directors are the only stockholders and the only beneficiaries of the trust, a sale to the corporation by its directors of their own property at their own price is neither void nor voidable at the instance of the corporation. (See *Sargent* v. *Palace Cafe Co.,* 175 Cal. 737, 739 [167 P. 146], and authorities cited; 6A Cal.Jur. 1121.) It thus appears that there are circumstances under which a director may deal with the corporation and that there are circumstances under which such a transaction will be neither void nor voidable at the instance of the corporation."

It is a familiar rule of corporate law that there are severe limitations on the right of a director to purchase property of the corporation at a judicial sale. (See Ballantine, Corporations, 210, § 79; cf. *Bainbridge* v. *Stoner, supra,* 16 Cal.2d 423, 429.) However, such a purchase may be subsequently ratified by the acts of the corporation and its stockholders provided they have sufficient knowledge of the material facts. (See 3 Fletcher, Cyclopedia of Corporations 265, § 881.) A similar rule should apply where the director's purported breach of his fiduciary relationship consists of a purchase of corporate assets with the full knowledge and acquiescence of all the directors and shareholders.

In the case at bar defendants made an offer of proof, the substance of which was that all of the sales to appellant

*subsequent* to September 6, 1952, were made with the full knowledge and acquiescence of Snyder and Lopez who allegedly dominated and controlled the corporation and owned all its stock. In rejecting this offer of proof the trial court erred to defendants' substantial prejudice since the proffered testimony would have tended to establish a tenable theory of defense.

Defendants further contend that the trial court erroneously computed damages in that (1) the court completely ignored such inherently vital elements in the determination of the fairness of the prices charged as (a) savings in freight which accrued to the corporation by reason of the fact that defendants, unlike other customers, were required to pick up and haul the merchandise; (b) that defendants paid all invoices within ten days in order to earn a 2 per cent discount, whereas, all other customers were allowed the same discount on payment by the 10th of the month following delivery; and (c) the very large volume of defendants' purchases as compared to Midway's much smaller sales to all other individual customers. (2) That the evidence conclusively shows that the "representative prices" charged to defendants as fixed by the judgment were unreasonable and unfair.

The amount of the damages awarded to plaintiff were determined by referenec to a sales and price analysis prepared by a certified public accountant. This report was introduced in evidence as plaintiff's Exhibit 6. According to the expert witness who prepared the exhibit, it was based upon the following principles: (1) Prices charged to other customers on the same date as date of sale to defendants; or (2) where no sale was made to other customers on same date as date of sale to defendants, then the price charged to other customers on the nearest date; (3) where no sale was made to other customers on same date or on any date within 30 days of the invoice date to defendants, then the prevailing list price was used (provided, however, that the sale made within such 30-day period was not of an abnormal quantity).

The record indicates that the trial court gave consideration to all of the so-called omitted factors. It appears that defendants' expert witness was not able to substantiate any part of the approximately $4,800 in freight charges which defendants claimed were saved by virtue of the contract provision requiring defendants to do their own hauling. We have been cited to no evidence that defendants received less favorable cash discount terms than other customers of Mid-

way. As to the third factor, that of defendants' agreement to buy minimum monthly amounts, there is evidence that during the entire period involved there was such a short supply of merchandise that Midway was unable to fill its orders. In other words, there is a tenable basis for the conclusion that, since there was a seller's market during the period in question, Midway received no substantial advantage from the greater volume of sales to defendants. We conclude that the record affords substantial support for the trial court's disposition of these items.

Defendants, however, make a persuasive argument that certain of the so-called "representative prices" adopted by the trial court in its computation of damages were manifestly unfair in that comparable sales were made to other customers at substantially lower prices on closely proximate dates. Since the cause is being remanded for a new trial, at which the evidence bearing upon the issue of damages may be substantially different, we deem it unnecessary now to determine the purely factual issue presented by this assignment. Neither party appears to question the legal element of the problem, namely, that current "representative prices" afford the proper basis of computation.

Defendants' final contention is that the trial court erred in allowing interest prior to judgment. This contention is untenable for two reasons. First, there was a sufficient basis for the trial court's determination that the plaintiff's demand was capable of ascertainment by calculation or by reference to well established market prices. (Civ. Code, § 3287; cf. *Anselmo* v. *Sebastiani,* 219 Cal. 292, 301 [26 P.2d 1]; *Ansco Const. Co.* v. *Ocean View Estates, Inc.,* 169 Cal. App.2d 235 [337 P.2d 146].) Secondly, under section 3288 of the Civil Code, the prevailing party may be awarded interest at the discretion of the trier of fact in cases involving fraud. (*Nathanson* v. *Murphy,* 147 Cal.App.2d 462, 466-467 [305 P.2d 710].) The taking of secret profits by a fiduciary gives rise to an action ex delicto which is at least constructively fraudulent. (*Cf. Ramey* v. *Meyers,* 159 Cal.App.2d 82, 87-88 [323 P.2d 805]; *Remillard Brick Co.* v. *Remillard-Dandini, supra,* 109 Cal.App.2d 405.)

Reversed.

Fox, P. J., and Ashburn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 25, 1959.