[L. A. 26447.   In Bank.   Apr. 11, 1963.]

EVA GREENE DAY, Plaintiff and Respondent, v. FRANK
TOWNSEND GREENE et al., Defendants and Appellants.

Leo B. Ward, in pro. per., Franklin W. Peck, Chapman, Frazer, Lindley & Young, John S. Chapman, William Elliott Viney, William P. Camusi, John B. Tittmann, Keith F. Quail, James V. Robins, Gibson, Dunn & Crutcher, Norman S. Sterry and Frederic H. Sturdy for Defendants and Appellants.

Lillick, Geary, McHose, Roethke & Myers, John C. McHose, Gordon K. Wright, Bryant & Moltzen, W. Byron Bryant, Harry C. Mabry, Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Plaintiff and Respondent.

GIBSON, C. J.—Eva Greene Day brought this action on December 27, 1957, to impress a constructive trust upon one-

seventh of the residual estate of her stepmother, Mary Greene, claiming that Mary had entered into an oral contract with Colonel Greene (Mary's husband and Eva's father) by which Mary agreed to leave her estate equally to Eva and the six children of Mary and Colonel Greene. The defendants include, among others, Mary's six children and the executors of her estate. Judgment was entered in favor of plaintiff, and all defendants, except one of the children, have appealed.

It is contended that the trial court's finding that there was an agreement to make a will as alleged is not supported by the evidence, that the alleged agreement is unenforceable by reason of the statute of frauds, that the action is barred by the statute of limitations, and that the evidence establishes as a matter of law the defense of accord and satisfaction.

Eva's parents, Colonel Greene and Ella Roberts Moson Greene, were married in Arizona in 1884. The only other child of that marriage died at an early age. Ella had two children by a prior marriage, Virginia and Frank Moson. Eva was born January 6, 1890. At the time of Ella's marriage to Colonel Greene she had substantial property of her own. The evidence does not show that Colonel Greene had any property of value at the time he married Ella. In 1894 several thousand cattle and horses bearing the "OR" brand were recorded in her name as her separate property. The cattle business was continued during the marriage, and funds from the sale of cattle were used to acquire Mexican mining property. Ella died on December 5, 1899, a resident of the Territory of Arizona. Her estate was not probated, and Colonel Greene took possession of all her assets. Under the intestate succession laws of the territory each of Ella's three children was entitled to two-ninths of her separate property and one-sixth of her community property.

On February 16, 1901, Colonel Greene married Mary Proctor. It does not appear that she owned any property at the time of the marriage. On April 21, 1901, Colonel Greene organized the Greene Cattle Company and took only one qualifying share of stock. A majority of the shares were placed in Mary's name, Virginia Moson received stock of a par value of $20,000, and there is some indication that Frank Moson received an undetermined amount of stock. Colonel Greene transferred to the corporation large properties in Arizona and all cattle branded "OR." When Eva was married in 1908 he gave her a stock certificate of $50,000 par value in the Greene Cattle Company as a wedding present.

With money from his mining operations Colonel Greene purchased the Cananea Ranch in Mexico, consisting of about 600,000 acres. Title to the ranch was placed in Mary's name, and, according to statements made by her, this was done because Colonel Greene engaged in many speculative ventures and wanted the ranch in her name to protect it against the claims of creditors in the event of financial difficulties. On May 10, 1901, Colonel Greene organized the Cananea Cattle Company, S.A., taking 98 per cent of the stock in his own name. He transferred his shares to Mary, who transferred some of them to her children. It is not clear whether the Cananea Cattle Company, which grazed cattle on the Cananea Ranch, ever obtained title to it. In general the transactions among Colonel Greene, Mary, and the several corporations formed by him are unclear, but it appears that with few exceptions all the properties other than the mining interests were placed directly or indirectly in Mary's name. Nearly all the mining property was lost in the 1907 economic crash.

Colonel Greene died on August 5, 1911, leaving a holographic will dated November 26, 1910, which designated Mary as executrix and sole beneficiary and did not mention Eva or any of his other children. He and Eva were devoted to each other, and when the will was read she expressed surprise that she was not mentioned in it. According to Eva's testimony, Mary said, "Your father and I discussed that and we agreed that he would leave everything to me in my lifetime and that I would take care of you upon my death, that you would share with my children, share and share alike." Following Colonel Greene's death Eva lived with Mary and her children in the family home in Los Angeles for approximately four years. Eva testified that she had full trust and confidence in Mary and relied on her to keep the agreement made with Colonel Greene.

Colonel Greene's will was probated in Los Angeles County It contained a declaration that "all of my property consists of mining property in Mexico." The only assets in the estate of any value were mining interests appraised at $13,000 and a promissory note appraised at $200, whereas there were creditors' claims amounting to approximately $150,000. None of the stock in the cattle company or the cattle ranches or other property placed by Colonel Greene in Mary's name was accounted for in his estate.

One of the Arizona ranches Colonel Greene had transferred

to the Greene Cattle Company was known as the ''Hereford Ranch.'' This ranch, together with cattle on it, was sold in 1912 for about $175,000. At that time Virginia Moson received $46,250 and Frank Moson, $28,750. In return they executed releases of all claims against Mary and the estate of Colonel Greene, and Virginia also transferred to Mary her stock in the Greene Cattle Company having a par value of $20,000. Eva received the company's note for $75,000, and she transferred to Mary her $50,000 stock certificate in the company. She did not sign a release. As to the purpose of this transaction Mary made various statements, including one to the effect that her intent was to carry out a suggestion of Colonel Greene that the Hereford Ranch be turned over to Ella's children in order to settle claims they had made because of the property their mother had owned.

Mary and her children retained the properties obtained from Colonel Greene and received the income as owners or as officers and directors of family corporations. She died testate at Cananea, Mexico, on November 27, 1955. During Mary's lifetime Eva did not assert any rights as heir of her mother or as pretermitted heir of her father.

Mary's will, executed in 1954, provided for legacies in excess of $100,000, including a legacy of $2,500 to Eva, and disposed of one-sixth of the residuary estate for the benefit of each of her six children, including in some instances provision for members of the child's family. She left property in Arizona, California, and Mexico. It is alleged in the complaint that her estate amounts to eight million dollars. This allegation is controverted by defendants, and the only evidence we find in the record relating to the subject shows that the Arizona estate alone contains assets appraised at approximately two million dollars.

The findings may be summarized as follows: Colonel Greene and Mary orally agreed that he would leave everything to Mary in her lifetime and that upon Mary's death she would provide for Eva in such a manner that Eva would share with Mary's children share and share alike. In reliance on this agreement Colonel Greene ''seriously and unalterably'' changed his position by abstaining from making *inter vivos* gifts or testamentary disposition to Eva and by leaving his entire estate ''before and at his death'' to Mary. Mary accepted and retained the benefits of the agreement and thereafter breached it and unjustly enriched her children by disposing of her residuary estate solely for their benefit. A

confidential relationship existed between Eva and Mary from the time of Mary's marriage to Colonel Greene until her death, and Eva relied on the agreement and did not attempt to enforce her claims in her father's estate until after she learned of the contents of Mary's will. To a substantial extent the property controlled by Colonel Greene, consisting of separate property of Ella, community property of his marriage to Ella, separate property of his own acquired during the period between his two marriages, and community property of his marriage to Mary, was transferred during his lifetime to corporations, and nearly all the stock received for the property was placed in Mary's name and was not included in the probate of Colonel Greene's estate. The receipt by Eva of the $75,000 promissory note did not constitute an accord and satisfaction of her rights under Mary's agreement with Colonel Greene or of any rights in her father's estate but only of her rights to a share of her mother's estate, i.e., the separate and community property which Ella owned at her death.

The finding with respect to Mary's agreement to provide for Eva is supported by Eva's testimony, and her testimony is corroborated by the circumstance that when the Hereford Ranch was sold she was not required to execute a release whereas the children of Ella's first marriage were required to do so. Defendants argue, in effect, that Eva's testimony is "so directly impeached" by statements made and positions taken by her in other litigation that her testimony does not constitute substantial evidence of the agreement.* Even if we assume that there may be some inconsistency between her testimony in this case and statements she made or positions she took in other proceedings, her testimony was not inherently improbable, and it was for the trial court to resolve any such inconsistency.

We are of the view that the trial court correctly determined that the statute of frauds did not render the agreement unenforceable. Although the statute requires that an agreement to make a provision by will be in writing (Civ. Code, § 1624, subd. 6; Code Civ. Proc., § 1973, subd. 6),

*In addition to the present action, Eva filed a creditor's claim in Arizona probate proceedings, actions in Arizona and California on the theory that she was a pretermitted heir of her father, and an action in California to establish a constructive trust in the properties left by Ella. The two California actions, which were consolidated for trial with the one before us, were held to be barred by laches, and Eva has not appealed. In Arizona the creditor's claim was denied, and the pretermitted heir action is pending on appeal following a judgment of dismissal.

a party will be estopped from relying on the statute where fraud would result from refusal to enforce an oral contract (*Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623 [220 P.2d 737]). The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute. (*Monarco* v. *Lo Greco, supra; Lake* v. *Jackson,* 191 Cal.App. 2d 372, 376 [12 Cal.Rptr. 652].) As we have seen, both these grounds of estoppel were found to be present here.

There is ample evidence to support the finding that, in reliance on his agreement with Mary, Colonel Greene "seriously and unalterably" changed his position by abstaining from making *inter vivos* gifts or testamentary disposition to Eva and by leaving his entire estate "before and at his death" to Mary. Colonel Greene transferred property of great value either directly or indirectly to Mary, and it can be inferred from the evidence that the transfers did not constitute outright gifts but that the property was held by Mary in a revocable trust for Colonel Greene during his lifetime and was not to vest in her absolutely unless he died without revoking the trust. The transfers began soon after his marriage to Mary, and a considerable part of the property so transferred had been the property of Ella. At least part of the property was transferred to Mary to protect it from claims of possible creditors of Colonel Greene. It also appears that, although Colonel Greene held only a qualifying share of stock in the Greene Cattle Company, he gave Eva a certificate having a par value of $50,000 as a wedding present. An additional indication that the transfer of the property was not an outright gift to Mary is the fact that, although the Hereford Ranch was owned by the Greene Cattle Company, Colonel Greene told Mary to turn the ranch over to Ella's children in settlement of their claims in their mother's estate. Colonel Greene did not revoke the trust prior to his death and in his will left all his estate to Mary, thus performing his part of the oral agreement. It could reasonably be inferred that Colonel Greene relied on his agreement with Mary for the protection of Eva and that for this reason he abstained from revoking the trust and making any other provision for her. This, of course, constituted a serious change of his position. It must necessarily follow that Mary's children would be un-

justly enriched if by invoking the statute of frauds they would succeed in retaining all the residuary estate of Mary, part of which but for Mary's breach would have gone to Eva.

The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded. (*Jefferson* v. *J. E. French Co.*, 54 Cal.2d 717, 718 [7 Cal.Rptr. 899, 355 P.2d 643]; *Leeper* v. *Beltrami*, 53 Cal.2d 195, 213 et seq. [1 Cal.Rptr. 12, 347 P.2d 12].) The remedy sought here, i.e., the imposition of a constructive trust, is used to prevent unjust enrichment or to compel restoration of property by one who is not justly entitled to it. The usual situation in which the relief is granted is found in cases where the substantive basis of the action is that the property has been obtained through actual fraud, violation of a confidential relationship, or breach of trust. (*Mazzera* v. *Wolf*, 30 Cal.2d 531, 535 [183 P.2d 649]; *Bainbridge* v. *Stoner*, 16 Cal.2d 423, 428 [106 P.2d 423]; *Monica* v. *Pelicas*, 131 Cal.App.2d 700, 704 [281 P.2d 269].)

The basis of the present action is that Mary violated confidential relationships with her husband and with Eva by failing to perform her part of the agreement after she had benefited from her husband's performance. Such a violation of a confidential relationship constitutes constructive fraud and where, as here, unjust enrichment results a constructive trust may be imposed. (Cf. *Orella* v. *Johnson*, 38 Cal.2d 693, 696-697 [242 P.2d 5]; *Lauricella* v. *Lauricella*, 161 Cal. 61, 65 [118 P. 430]; *Brison* v. *Brison*, 75 Cal. 525, 529 [17 P. 689].) The fact that a breach of contract is involved is not decisive as to the applicable statute of limitations. In *Souza & McCue Constr. Co.* v. *Superior Court*, 57 Cal.2d 508, 511 [20 Cal.Rptr. 634, 370 P.2d 338], we held that section 338, subdivision 4, of the Code of Civil Procedure, relating to relief on the ground of fraud, was applicable where the action was based on a fraudulent breach of a contractual duty. Constructive fraud is the substantive basis of the action to impose a constructive trust in the present case, and where constructive fraud is the gravamen of the action the three-year period prescribed in section 338, subdivision 4, of the Code of Civil Procedure applies. (*Neet* v. *Holmes*, 25 Cal.2d 447, 467 [154 P.2d 854].) Since this action was filed within three years after Mary's death, it is not barred by the statute.

We find no merit in defendants' contention that as a matter of law the transaction in which Eva received a $75,000

note from the Greene Cattle Company and transferred shares of stock in the company to Mary constituted an accord and satisfaction of Eva's rights arising from Mary's agreement with Colonel Greene to provide for Eva by will. The finding of the trial court contrary to this contention is supported by substantial evidence.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Appellants' petition for a rehearing was denied May 8, 1963.