[L.A. No. 29886. In Bank. Nov. 24, 1971.]

MITZI LEE REDKE, Plaintiff and Respondent, v.
ABRAHAM SILVERTRUST, as Executor, etc., and Co-trustee, etc., et al.,
Defendants and Appellants.

## COUNSEL

Ervin, Cohen & Jessup, Allan Browne, O'Melveny & Myers, Philip F. Westbrook, Jr., Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendants and Appellants.

Samuel Reisman, Ball, Hunt, Hart, Brown & Baerwitz and Clarence S. Hunt for Plaintiff and Respondent.

Edward L. Lascher, Richard E. Rader and Henry E. Kappler as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Plaintiff Mitzi Lee Redke brought an action in Los Angeles Superior Court to enforce the terms of an oral agreement allegedly made for her benefit between her mother Ann Hayden, and her stepfather, Samuel Hayden, both of whom are now deceased, whereupon Sam agreed to bequeath certain of Ann's separate property to Mitzi. Defendants, who are the executors of Sam's estate, co-trustees of a trust created by him, and testamentary trustees under Ann's will, appeal from a judgment in Mitzi's favor. We have concluded that, except for one minor modification, the judgment should be affirmed.

The pertinent facts underlying the dispute are as follows: In 1955, Sam, a widower with three adult children, married Ann, mother of Mitzi and Warren. By 1963, Ann's separate property had grown from approximately $20,000-$40,000 to over a million dollars, largely a result of Sam's assistance in managing her investments. Ann executed a will and an *inter vivos* trust which provided that half of her separate property would be placed in a marital deduction trust for Sam, giving him a general power of appointment over that property; the remaining half was to be placed in trust for her children, Mitzi and Warren. Sam executed a similar will and trust leaving half of his property to Ann, and half in trust for Mitzi and Warren.

On February 22, 1963, Warren died unexpectedly from a heart attack. Ann, who was suffering from terminal cancer, was informed of her son's death the following day. That news was a shock to Ann, and she immediately became concerned about providing for Mitzi, whose husband was also ill. Consequently, she informed Sam, in the presence of her nurse, Mitzi and another person, that she wanted to call her lawyers to change her will and trust to leave *all* of her separate property to Mitzi. Sam assured her that no such changes were necessary, and promised that if Ann died, Sam would leave his share of Ann's property to Mitzi upon his own death and would see that Mitzi received all of Ann's property. Ann agreed. Thereafter, the only substantial changes made in Ann or Sam's estate plans prior to Ann's death were amendments to their trusts to give Warren's share of their trust

estates to Mitzi; Ann also executed a document transferring to her trust most of her remaining property.

Ann died on April 5, 1963. On the following day, Sam offered to give to Mitzi Ann's jewelry and furs, a matter discussed separately below. Sam also reaffirmed to various persons, including Mitzi, his promise to leave Mitzi his share of Ann's property. Nevertheless, within a few months following Ann's death, Sam met and married Ruth Allender and shortly thereafter amended his trust and will eliminating all provision for Mitzi and naming as beneficiaries his new wife and his natural children. Sam died in 1965, and Mitzi filed creditor's claims against his estate based upon the oral agreement and the separate gift of furs and jewelry.

At trial, defendants denied the existence of the alleged oral agreement and contended, among other things, that such an agreement would be unenforceable under the statute of frauds and void as contrary to public policy, being an illegal evasion of federal and state death taxes. The trial court made extensive findings which, in effect, recognized the existence of the oral agreement and upheld its validity and enforceability. The court held that upon Ann's death Sam became constructive trustee for the benefit of Mitzi of all of Ann's separate property, furs and jewelry received by Sam from and after Ann's death, together with all income, interest and profits derived therefrom. The court's judgment ordered defendants to deliver to Mitzi certain designated stock valued at $392,186.48, with dividends and increments thereto, plus 7 percent interest from the date of judgment. In addition to this stock, Mitzi was awarded $457,916.06, plus 7 percent interest from the date of judgment. Mitzi also obtained judgment for all damages which she or Ann's estate may incur by reason of Sam's negligence or misconduct.

## 1. *The Oral Agreement*

■■ In general, a contract to make a particular testamentary disposition of property is valid and enforceable. ■■ As in every contract, "there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. [Citations.] Where the parties contract to make a particular disposition of property by will, the agreement necessarily includes a promise not to breach the contract by revoking the will and failing to dispose of the property as agreed." (*Brown* v. *Superior Court,* 34 Cal.2d 559, 564-565 [212 P.2d 878]; *Brewer* v. *Simpson,* 53 Cal.2d 567, 588-589 [2 Cal.Rptr. 609, 349 P.2d 289].) ■■ If the contract is executed between spouses,

a failure to perform it constitutes a violation of their confidential relationship and is constructive fraud which justifies the imposition of a constructive trust. (*Day* v. *Greene,* 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802].)

The trial court correctly determined that the statute of frauds did not render the agreement unenforceable. ■ "Although the statute requires that an agreement to make a provision by will be in writing (Civ. Code, § 1624, subd. 6; Code Civ. Proc., § 1973, subd. 6), a party will be estopped from relying on the statute where fraud would result from refusal to enforce an oral contract [citation]. The doctrine of estoppel has been applied where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute. [Citation.]" (*Day* v. *Greene, supra,* 59 Cal.2d 404, 409-410; see *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 623 [220 P.2d 737]; *Notten* v. *Mensing,* 3 Cal.2d 469, 474 [45 P.2d 198]; *Mintz* v. *Rowitz,* 13 Cal.App. 3d 216, 223-225 [91 Cal.Rptr. 435].)

■ The trial court found that Ann, by reason of her trust and confidence in Sam, and in reliance upon his oral promise, changed her position to her detriment, and to Mitzi's detriment, by not changing her will and trust to make Mitzi her sole beneficiary; she changed her position by maintaining the status quo despite her concern over her daughter's welfare. Defendants do not question the evidentiary support for this finding, nor do they dispute the applicable law set forth above. ■ They do, however, contend that Sam and Ann subsequently abandoned the agreement, a factual question which the trial court resolved in plaintiff's favor. There was ample evidence to support the court's finding that the agreement was not abandoned, including the fact that after Ann's death, Sam affirmed to five witnesses, including Mitzi, his agreement to leave his share of Ann's property to Mitzi.[1] ■ We conclude that the trial court correctly held that defendants are estopped to rely upon the statute of frauds.

---

[1]Defendants also point out that the trial court found that Sam's promise was *conditioned* upon Ann's agreeement not to change her will and trust, and that the court also found that Ann in fact did change her trust by eliminating therefrom all provision for Warren. Defendants urge us to hold that Ann thereby breached her part of the agreement, relieving Sam from his obligations thereunder. The contention is wholly without merit. The essence of Ann's agreement, as found by the trial court, was that in consideration of Sam's promise, Ann would not change her will and trust *to leave her property to Mitzi rather than Sam.* Ann fully performed that agreement, and the fact that she modified her trust, following Warren's death, to eliminate his share was wholly consistent with, and not in breach of, the oral agreement.

Defendants' primary contention is that the agreement between Ann and Sam was illegal and against public policy as an attempted evasion of death taxes. By the terms of Ann's will and trust, Sam was given half of Ann's separate property for life, with an unlimited power to appoint the remainder. One of the purposes of framing Ann's estate plan in this manner was to take advantage of the tax benefits afforded by the federal marital deduction (26 U.S.C. § 2056) whereby death taxes may be lawfully avoided as to one half of a spouse's separate property. ■ The federal deduction is only available, however, if the surviving spouse is given the unrestricted right to dispose of the property as he chooses. Any limitation upon that right could result in the loss of the deduction. Thus, "if the surviving spouse entered into a binding agreement with the decedent to exercise the power [of appointment] only in favor of their issue, that condition [i.e., that the surviving spouse be given an unrestricted right of disposition] is not met." (Fed. Tax Reg. (1971) § 20.2056(b)-5(g)(2); see *Batterton* v. *United States,* 406 F.2d 247.)

The evidence discloses that following Ann's death, Sam, as executor of her estate, claimed the marital deduction, obtaining a substantial tax savings. It is likely that had the existence of the oral agreement restricting Sam's right to dispose of Ann's property been disclosed to the taxing authorities, the deduction would have been disallowed. Defendants contend, therefore, that the agreement constituted a fraud upon the tax authorities and should not be enforced.

Since any wilful attempt to evade or defeat taxes is a crime (26 U.S.C. § 7201), had Ann and Sam entered into their agreement with the intent of fraudulently concealing its existence from the tax authorities for the purpose of improperly obtaining the marital deduction, it is likely that we would hold the agreement unenforceable. (See *Platt* v. *Wells Fargo Bank,* 222 Cal.App.2d 658, 664 [35 Cal.Rptr. 377].) However, having failed to prove such an intent at trial, defendants cannot prevail.

There was, of course, nothing illegal per se in Sam's oral agreement to leave to Mitzi Sam's share of Ann's separate property, for that agreement could have been carried out in an entirely legal manner had Sam disclosed its existence to the tax authorities, or chosen not to claim the marital deduction. ■ As a general rule, if a contract can be performed legally, a court will presume that the parties intended a lawful mode of performance. (*West Covina Enterprises, Inc.* v. *Chalmers,* 49 Cal.2d 754, 759 [322 P.2d 13].) Therefore, unless Ann and Sam entered into their agreement with the intent of fraudulently concealing its existence from the federal government for the purpose of obtaining the marital deduction, that

agreement would be valid and enforceable. (*Platt* v. *Wells Fargo Bank, supra,* 222 Cal.App.2d 658, 664.)

The trial court found that Ann was a housewife with little familiarity with business transactions, that Sam was the dominant influence in managing their legal and financial affairs, that Ann had no part in choosing the method by which Sam would carry out his promise to provide for Mitzi, that after the oral agreement was made, Ann (suffering from terminal cancer) had no concern with the tax consequences of that agreement and had no reason to suspect that Sam would proceed illegally in carrying it out, and that "Notwithstanding any explanations that may have been offered to her, it is doubtful that Ann had any particular or clear comprehension or understanding at any time of the technical aspects" of a marital deduction, or an unlimited power of appointment, or the tax laws pertaining thereto.

Defendants point to evidence that after the oral agreement was made, Ann failed to disclose its existence to her attorneys and tax advisers, despite the fact that she did discuss and make certain other changes in her estate plan and had been previously advised that in order to preserve the marital deduction Sam must be given an unrestricted power to appoint half her separate property to whomever he chooses. Defendants would infer from this evidence that Ann intentionally concealed the agreement for the purpose of defrauding the tax authorities.

As noted in *Platt* v. *Wells Fargo Bank, supra,* 222 Cal.App.2d 658, 664, questions of "intent" and "purpose" are ordinarily questions of fact to be determined by the trial court. The trial court's findings regarding Ann's intent and state of mind are amply supported by the evidence, including the fact that it was Sam who counseled her not to change her will and trust, that Ann was in poor health during the period in question and had little knowledge of business transactions or tax laws, and that Ann entrusted Sam with the responsibility of managing her affairs. It is true that the evidence cited by defendants could have raised an inference that Ann concealed the oral agreement from her attorneys in order to gain tax benefits for her estate. A contrary inference could have been drawn, however, that Ann, in the suffering of her last days, either innocently forgot to mention the agreement or simply failed to appreciate its significance from a tax standpoint.

The evidence of Sam's intent is less clear, although it is undisputed that following Ann's death, as executor, he did claim the marital deduction for Ann's estate without disclosing to the tax authorities the existence of his agreement with Ann. However, even if we assume that Sam acted

fraudulently in concealing the agreement, defendants may not rely upon his fraud as a shield against Mitzi's claim for breach of that agreement. ▆▆▆ As we noted in *Tri-Q, Inc.* v. *Sta-Hi Corp.,* 63 Cal.2d 199, 219 [45 Cal.Rptr. 878, 404 P.2d 486], quoting from 6A Corbin on Contracts, section 1518, page 744, " 'A bargain may be illegal by reason of the wrongful purpose of one or both of the parties making it. This is true even though the performances bargained for are not in themselves illegal and even though in the absence of the illegal purpose the bargain would be valid and enforceable. A party who makes such a bargain in furtherance of his wrongful purpose can not enforce it, *even though it is enforceable against him by the other party if the latter is innocent of such a purpose.*' " (Italics in original.)

▆▆▆ Defendants also urge that regardless of Sam's or Ann's intent, all such oral agreements should be declared void as against public policy, in order to deter others from attempting to evade death taxes by such a device. We cannot so readily assume, however, that other persons will be induced to violate the tax laws in this manner, or that the taxing authorities will fail to discover their fraud.[2] Cases will be rare indeed wherein the promisee spouse will be willing to forego the security of a formal, written estate plan in reliance upon oral assurances by the promisor spouse, solely to gain possible tax benefits at death. Moreover, we doubt that those few persons so inclined to commit tax fraud would be deterred from doing so by a ruling that such an agreement would be unenforceable, for if the agreement is carried out in accordance with its terms, the issue of enforceability would never be raised or litigated. We conclude that in the absence of fraudulent intent by the promisee spouse, an oral agreement to make a testamentary disposition of the nature involved herein is not void or unenforceable as against public policy. Accordingly, that portion of the trial court's judgment which upheld Mitzi's right to enforce Sam and Ann's oral agreement should be affirmed.

### 2. *The Gift of Ann's Jewelry and Furs*

As an alternative theory for recovery of Ann's jewelry and furs, Mitzi contended (and the trial court found) that after Ann's death Sam gave these items to Mitzi, and subsequently agreed to repurchase them from her and to deposit the proceeds in her trust. Defendants contend, however, that the gift was incomplete, since Sam retained possession of most of the jewelry and furs rather than delivering them to Mitzi. (See *Gordon* v. *Barr,* 13 Cal.2d

---

[2]It should be noted that there is no limitations period on actions by federal taxing authorities to assess or collect a tax in cases involving fraudulent or willful attempts to evade taxes. (26 U.S.C. § 6501, subd. (c).)

596, 601-602 [91 P.2d 101]; *Blonde* v. *Estate of Jenkins,* 131 Cal.App.2d 682, 686 [281 P.2d 14].) Nevertheless, as we have pointed out, Mitzi had an enforceable claim to Ann's jewelry and furs by reason of the oral agreement in her favor. Therefore, whether Sam in fact "gave" these items to Mitzi is irrelevant; he had already agreed with Ann to transfer them to Mitzi at his death, and he subsequently agreed with Mitzi to purchase them from her and to deposit the proceeds in her trust. ██ Accordingly, the trial court properly awarded to Mitzi the fair market value of Ann's jewelry and furs, i.e., $76,800 as of the date of Sam's death.

Defendants contend that Mitzi should be bound by the valuation of the jewelry and furs set forth in the decree of distribution in Ann's estate, i.e., $37,915. However, since Sam's promise was to transfer these items to Mitzi at his death, their value at the time of *Ann's* death was not relevant. Moreover, much of the difference between the two valuation figures is represented by a $28,000 diamond ring belonging to Ann but inadvertently omitted from the decree of distribution in Ann's estate. Mitzi had no reason to question the accuracy of that decree, trusting in Sam to carry out his promise and transfer *all* of Ann's property to her. Accordingly, it would be inequitable to hold Mitzi bound by the valuation and inventory of assets set forth in the decree in Ann's estate. The judgment of the trial court awarding to Mitzi the fair market value of Ann's jewelry and furs as of the date of Sam's death should be affirmed.

### 3. *Miscellaneous Questions*

#### a. *Liability for death taxes*

██ Defendants assert that since the trial court's judgment is silent concerning Mitzi's liability for death taxes on the money and property awarded to her, that judgment will have the effect of relieving Mitzi from death taxes to the detriment of Sam's heirs and estate. Without passing on the question of the parties' respective tax liability, it seems apparent that this question was neither presented to, nor litigated by, the trial court. If Mitzi in fact owes taxes on her share of Ann's property or is obligated to reimburse Sam's heirs or estate for taxes previously paid on property thereafter awarded to her, such matters may be determined in separate proceedings. (See *Platt* v. *Wells Fargo Bank, supra,* 222 Cal.App.2d 658, 670.) Moreover, we note that the trial court has retained jurisdiction to make such further orders between the parties as may be proper, and perhaps the court will agree to entertain the tax matter raised by defendants.

### b. *Interest on money judgment*

The trial court awarded to Mitzi the fair market value of Ann's jewelry and furs and her interest in the home and furnishings, together with 7 percent interest on those amounts from the date of Sam's death. Defendants maintain that since the value of the foregoing property was in dispute throughout the trial, Mitzi's damages were unliquidated and an award of prejudgment interest was improper. (See former Civ. Code, § 3287; *Caplan* v. *Schroeder,* 56 Cal.2d 515, 521 [15 Cal.Rptr. 145, 364 P.2d 321].) As Mitzi points out, however, her cause of action was not based upon simple breach of contract but arose out of Sam's violation of his confidential relationship with Ann by his failure to perform his part of their agreement after having benefited from Ann's performance. ▇▇▇ "Such a violation of a confidential relationship constitutes constructive fraud and where, as here, unjust enrichment results a constructive trust may be imposed. [Citations.]" (*Day* v. *Green, supra,* 59 Cal.2d 404, 411.)

Since Mitzi has proceeded on the theory of constructive fraud, she is entitled to the benefit of Civil Code section 3288, which provides that "In an action for breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." ▇▇▇ Under the cases, the trial court may award prejudgment interest under section 3288 whether or not plaintiff's damages are "liquidated." (See *Estate of Piercy,* 168 Cal. 755, 758 [145 P. 91]; *Tevis* v. *Beigel,* 174 Cal.App.2d 90, 101 [344 P.2d 360]; *Katz* v. *Enos,* 68 Cal.App. 2d 266, 278-279 [156 P.2d 461]; see also Civ. Code, § 2237; *Bass* v. *Youngblood,* 221 Cal.App.2d 278, 289 [34 Cal.Rptr. 326]; *Nathanson* v. *Murphy,* 147 Cal.App.2d 462, 466-467 [305 P.2d 710]; *Brunson* v. *Babb,* 145 Cal.App.2d 214, 230 [302 P.2d 647]; *West* v. *Stainback,* 108 Cal.App. 2d 806, 819 [240 P.2d 366].) ▇▇▇ Since Sam had promised to turn over Ann's property to Mitzi upon his death, and since his failure to do so constituted constructive fraud, the trial court had discretion under section 3288 to award Mitzi interest from the date upon which the fraud occurred.

### c. *Interest on cash proceeds from sale of stock*

▇▇▇ The trial court awarded Mitzi 7 percent interest on certain of Ann's stock sold by Sam following her death; interest is to run from the date of sale, rather than the date of Sam's death. Defendants contend that Sam's obligations to Mitzi did not arise until his death, and that his estate should not be held liable for interest prior to that time. Defendants fail to appreciate, however, that upon Ann's death, Sam became constructive trustee of Ann's property, with an obligation to hold *all* of that property for Mitzi's benefit. Upon Sam's breach of the agreement, Mitzi was entitled to the bene-

fit of those statutory provisions, such as Civil Code section 2237, which measure the liability of a defaulting trustee. (See *McDaniel v. McDaniel*, 275 Cal.App.2d 927, 944 [80 Cal.Rptr. 837]; *Bank of America v. Ryan*, 207 Cal.App.2d 698, 710 [24 Cal.Rptr. 739].) Section 2237 obligates a trustee who has wrongfully disposed of trust property to account for all profits so made, or the value of the use of the property, "or to account for its proceeds with interest." Thus, the trial court properly awarded Mitzi interest, from the date of sale, upon the proceeds of the stock Sam sold during his life.

### d. *Interest upon stock retained by Sam*

The trial court awarded Mitzi all of Ann's stock retained by Sam, together with 7 percent interest upon its fair market value, which interest is to run from the date of judgment until the date of delivery to Mitzi. Defendants correctly contend that interest may only be awarded on a *money* judgment, and not upon a judgment awarding stock or other personal property. (*Estate of Neilson*, 57 Cal.2d 733, 748-749 [22 Cal.Rptr. 1, 371 P.2d 745]; *Sullivan v. Wellborn*, 32 Cal.2d 214, 219 [195 P.2d 787]; *Jones v. Sacramento Sav. & Loan Assn.*, 248 Cal.App.2d 522, 531 [56 Cal.Rptr. 741]; *Chase v. Leiter*, 96 Cal.App.2d 439, 459 [215 P.2d 756]; *Estate of Lockhart*, 21 Cal.App.2d 574 [69 P.2d 1001].) Plaintiff's theory is that the court's judgment was in effect a money judgment since it ordered defendants to deliver the stock to Mitzi within five days after entry of judgment or face a money judgment for the fair market value of the stock, computed according to various specified methods. Plaintiff asserts that defendants failed to deliver the specified stocks to her within the five-day period, thereby converting the award of stock into a money judgment upon which post-judgment interest properly could be imposed. Defendants claim, however, that pursuant to a "gentlemen's agreement" with plaintiff's counsel, defendants acted as expeditiously as possible to comply with the judgment and to deliver the stocks to the clerk of the court, that plaintiff never objected to the brief delay in depositing these stocks, and that defendants should be deemed to have substantially complied with the judgment in this respect.

In view of the fact that resolution of the question involves matters occurring subsequent to the entry of judgment and lying outside the record, we think it appropriate that the trial court determine whether, in fact, defendants have complied with the judgment as it pertains to the delivery of the stock. As indicated above, however, in the event the trial court finds that defendants did comply with its judgment, no post-judgment interest may be imposed upon the value of the stocks.

### e. *Indemnification provision*

Finally, defendants complain that the trial court erred in awarding

Mitzi any future damages which she or Ann's estate may incur by reason of Sam's acts, and requiring defendants to indemnify her and Ann's estate from any such liability. Defendants claim that this portion of the judgment exceeds the issues litigated by the parties and adjudicates "conjectural and premature matters" not properly before the court. As we have seen, however, the record indicates that Sam, as executor of Ann's estate, may have wrongfully claimed the federal marital deduction by concealing the existence of the oral agreement. It is possible that by reason of his acts, the taxing authorities may attempt to impose penalties in the matter. ■■ Under such circumstances, the trial court, sitting in equity, had the power to "adjust all the differences between the parties arising from the cause of action in order to do complete justice and prevent further litigation, whether or not the particular relief was requested." (*Sears* v. *Rule,* 27 Cal.2d 131, 149 [163 P.2d 443]; see *Coons* v. *Henry,* 186 Cal.App.2d 512, 519 [9 Cal.Rptr. 258].) ■■ The trial court herein did no more than determine that Mitzi should not share responsibility for Sam's acts, retaining jurisdiction to make such further orders as may be necessary to protect her interests in the event claims are filed against either her or Ann's estate, of which she was a principal beneficiary.

The judgment is modified by striking therefrom the award of post-judgment interest upon any stocks found to have been delivered by defendants to plaintiff in compliance with the terms of the judgment. As so modified, the judgment is affirmed and the cause is remanded to the Los Angeles County Superior Court for further proceedings not inconsistent with this opinion. Plaintiff shall receive her costs on appeal.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Appellants' petition for a rehearing was denied December 29, 1971, and the opinion and judgment were modified to read as printed above.