Filed 2/5/21  Eisenhauer v. Wooley CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| REBECCA EISENHAUER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CAROLYN WOOLEY, Individually and as Successor Trustee, etc.,<br><br>    Defendant and Respondent. | B304851<br><br>(Los Angeles County<br>Super. Ct. No. 19LBCV00220) |

APPEAL from  a judgment of the Superior Court of Los Angeles County.  Mark C. Kim, Judge.  Reversed in part, affirmed in part, and remanded with directions.

Law Offices of Mariano A. Alvarez and Mariano A. Alvarez for Plaintiff and Appellant.

Guerra & Seyedi and Tracy Guerra for Defendant and Respondent.

_____

Rebecca Eisenhauer appeals from an order dismissing her complaint after the trial court sustained a demurrer. Eisenhauer lived in a "marriage-like relationship" with Gerold Skillstad for five years before Skillstad's death. Eisenhauer alleged that Skillstad promised he would provide for her for the rest of her life and would leave her his assets. However, when Skillstad died, respondent Carolyn Wooley—Skillstad's daughter and the successor trustee of Skillstad's trust—allegedly refused to honor Skillstad's promise and instead transferred Skillstad's assets to her own trust.

Eisenhauer sued respondent Wooley to enforce Skillstad's alleged agreement, to "quiet title" to real property that Skillstad owned through his trust, and on various tort theories.[1] The trial court sustained respondent's demurrer to Eisenhauer's quiet

---

[1] Eisenhauer's complaint names Wooley in her individual capacity and as a trustee of Skillstad's trust and her own trust. (See Prob. Code, § 18004; *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349 ["the proper procedure for one who wishes to ensure that trust property will be available to satisfy a judgment, whether for damages for breach of contract or for specific performance, [is to] sue the trustee in his or her representative capacity"].) Assets held in a revocable trust upon the death of the trust's settlor are subject to claims by creditors of the deceased settlor's estate. (See Prob. Code, §§ 18200, 19001.) For clarity, we refer to Wooley by her surname with respect to Eisenhauer's tort theories against her individually and use the term "Estate" to refer to her in her representative capacity as a trustee of funds that are subject to claims against Skillstad's estate. We refer to Wooley in both capacities as "Respondent."

title, contract, and tort claims without leave to amend.[2] The trial court concluded that: (1) Eisenhauer had no quiet title claim, as she had only an expectancy interest in Skillstad's real property as a creditor; (2) Eisenhauer's contract claim was barred by the statute of frauds; and (3) Eisenhauer failed to allege any conduct amounting to a tort.

We reverse the trial court's ruling on Eisenhauer's breach of contract claim. Eisenhauer's complaint alleges facts sufficient to support a claim that the Estate is estopped from asserting the statute of frauds.

We affirm the trial court's ruling with respect to Eisenhauer's other causes of action, except that we conclude Eisenhauer should be given an opportunity to state a claim for tortious interference with contract against Wooley, if she is able to do so.

## BACKGROUND

### 1. Eisenhauer's Complaint

Eisenhauer met Skillstad while she was married to her former husband, Frank. Eisenhauer and Skillstad often met and conversed in the neighborhood while walking their dogs.

---

[2] The trial court granted Eisenhauer leave to amend her causes of action for declaratory relief and interference with prospective economic advantage, but Eisenhauer failed to amend and the trial court subsequently dismissed her complaint. The dismissal order is appealable. (*Door v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [" '[A]n order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment' "].)

Frank died in February 2013.  Skillstad offered to take care of Eisenhauer's dog, and the two saw more of each other.  Skillstad eventually told Eisenhauer that he had feelings for her.

Frank's grandson forced Eisenhauer to leave her house after Frank died.  When he learned of this, Skillstad suggested that Eisenhauer live with him.  He told her that, "if she would accept his love, he would take care of her and support her for the rest of her life."  He also told her that "what was his would be hers as well."

Eisenhauer and Skillstad lived together from April 2013 until Skillstad died in August 2018.  They lived "as if they were a married couple."  Eisenhauer cared for Skillstad as a husband, cooked and cleaned for him, and took care of him when he was sick and dying from cancer.

Skillstad told Eisenhauer "many times" that he did not want to "ruin what they presently had" by getting married.  Eisenhauer told him that she was also happy and would not pressure him to marry if he did not want to.

Skillstad promised Eisenhauer that he would "support her even after his death," and that "his house and properties would be hers."  He told her that he had established a trust and made Eisenhauer its beneficiary.  Eisenhauer believed him.  Wooley was present during discussions in which Skillstad said that all his property would go to Eisenhauer when he died and that "no relative of his could tell [Eisenhauer] to move out."  Wooley was also present when Skillstad said that he had "already made a tust [*sic*] regarding his promises and assurances to [Eisenhauer]."

Skillstad died on August 5, 2018.  Less than a month later, Wooley demanded that Eisenhauer move out of the house in which she had lived with Skillstad.  Wooley told Eisenhauer that

4

Wooley was the "sole surviving trustee" of the trust in which Skillstad held his assets (Skillstad Trust).

The Skillstad Trust owned two real properties in Long Beach, including the house on Gaviota Avenue in which Skillstad and Eisenhauer had lived. It also owned various bank investment accounts. In her capacity as the surviving trustee, Wooley signed a grant deed (Grant Deed) "transferring the Skillstad Trust's assets and properties to the Charles and Carolyn Wooley Survivors Trust" (Wooley Trust).[3]

Wooley also filed an "eviction complaint" against Eisenhauer. Wooley obtained a judgment ordering Eisenhauer to leave the Gaviota Avenue house, and Eisenhauer complied.

Eisenhauer's complaint alleged causes of action for: (1) "enforcement of an oral agreement"; (2) tortious interference with contract; (3) negligent interference with prospective economic advantage; (4) quiet title; (5) cancellation of instrument (i.e., the Grant Deed); (6) declaratory relief; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress.

## 2. Respondent's Demurrer

Respondent demurred to Eisenhauer's complaint on a number of grounds, including the general ground that the complaint failed to state any cause of action.

The trial court sustained the demurrer. With respect to Eisenhauer's contract claim, the court found that the statute of

---

[3] Although the body of Eisenhauer's complaint alleges that Wooley transferred all the assets of the Skillstad Trust, the grant deed itself (which Eisenhauer attached as an exhibit to her complaint) refers only to the Gaviota Avenue house.

frauds precluded enforcement of Skillstad's alleged promises to Eisenhauer and that, as a nonparty to the alleged contract and a trustee of the Skillstad Trust, Wooley could not "deviate from the terms of the trust."

The trial court also concluded that: (1) Eisenhauer failed to allege any tortious conduct; (2) Eisenhauer's causes of action for quiet title and cancellation of instrument did not state a claim because Eisenhauer had only an "expectancy interest" in Skillstad's property rather than legal or equitable title; and (3) Eisenhauer failed to allege any outrageous conduct supporting her claim for intentional infliction of emotional distress.

The court sustained the demurrer without leave to amend except for Eisenhauer's causes of action for declaratory relief and interference with prospective economic advantage. The trial court subsequently dismissed the complaint after Eisenhauer failed to amend.

## DISCUSSION

### 1. Standard of Review

An order sustaining a demurrer is reviewed de novo to determine whether the complaint states a cause of action as a matter of law. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) On appeal, we " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

In determining whether a complaint states a cause of action, its allegations "must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) The complaint must be given "a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank,*

6

*supra,* 39 Cal.3d at p. 318.)  A demurrer should not be sustained " 'when the plaintiff has stated a cause of action under any possible legal theory.' " (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810, quoting *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)[4]

When a trial court sustains a demurrer without leave to amend, the court's decision not to permit further amendment is reviewed for abuse of discretion.  (Code Civ. Proc., § 472c, subd. (a); *Ellenberger v. Espinosa* (1994) 30 Cal.App.4th 943, 947.)  If the complaint does not state facts sufficient to constitute a cause of action, the appellate court must determine whether there is a reasonable possibility that the defect can be cured by amendment.  (*Ellenberger*, at p. 947.)

## 2.     Eisenhauer Has Adequately Stated a Cause of Action for Breach of Contract

Eisenhauer's complaint alleges facts that could support two theories of breach.  First, Eisenhauer claims Skillstad promised that he would "take care of [Eisenhauer], provide for and support [her] for the rest of her life."  Second, Skillstad allegedly promised that, "when he died, his assets and properties would go

---

[4] Respondent incorrectly states that the trial court "ruled as a finding [*sic*] of fact" on Eisenhauer's claims and argues that Eisenhauer is "merely trying to relitigate the facts of the case" on appeal.  Respondent misunderstands the standard of a review in an appeal from a judgment on a demurrer.  The trial court did not make any findings of fact, but simply decided the legal sufficiency of the complaint.  We do not defer to the trial court's analysis, but rather independently determine whether the complaint states a claim while treating all properly pleaded facts as true.  (*Blank, supra,* 39 Cal.3d at p. 318.)

7

to [Eisenhauer]." Eisenhauer claims that Skillstad made these promises in exchange for Eisenhauer's commitment to "take care of [Skillstad]" and to devote herself to him as if they were married.

Both of these theories are legally sound. The first theory alleges a support agreement between cohabitants, which is enforceable under *Marvin v. Marvin* (1976) 18 Cal.3d 660, 665 (*Marvin*). (See *Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1063 (*Byrne*).) Such a "*Marvin* agreement" is also "enforceable against an estate when one of the parties to the agreement dies." (*Byrne*, at p. 1064; see *Estate of Fincher* (1981) 119 Cal.App.3d 343, 348–350.)

The facts in *Byrne* are remarkably similar to the alleged facts here. In *Byrne*, a couple (Skip and Flo) lived together for five years after previous marriages. Skip promised he would take care of Flo for the rest of her life, and Skip and Flo agreed that all of their property belonged to both of them. (*Byrne, supra,* 52 Cal.App.4th at pp. 1059–1060.) Skip assured Flo that he would put her name on his property and that he would "put all of his property into a living trust for her benefit." (*Id.* at p. 1061.)

Skip died without changing the title on any property and left a will that named no living beneficiaries. (*Byrne, supra,* 52 Cal.App.4th at p. 1061.) Flo filed a creditor claim against Skip's estate, and then filed suit after her claim was denied. (*Id.* at p. 1062.) The trial court granted summary judgment in favor of the estate.

The Court of Appeal reversed. The court concluded that Skip's promise to support Flo was distinct from his promise to give her his property, and that, based upon the proffered evidence, the "*estate* breached that contract by rejecting Flo's

8

claim and thereby failing to provide her with means of support after Skip died." (*Byrne, supra,* 52 Cal.App.4th at p. 1064.)

Similarly, here, Skillstad allegedly promised Eisenhauer that he would support her for the rest of her life in exchange for her agreement to live with him as his putative spouse and to care for him. The Estate allegedly breached that promise by failing to support Eisenhauer.

Eisenhauer also alleges that Skillstad promised to leave his assets to her. That allegation supports a second legally viable contract claim against the Estate. "In general, a contract to make a particular testamentary disposition of property is valid and enforceable." (*Redke v. Silvertrust* (1971) 6 Cal.3d 94, 100 (*Redke*).) And property agreements between cohabitants are enforceable under *Marvin.* (See *Byrne, supra,* 52 Cal.App.4th at p. 1067, citing *Marvin, supra,* 18 Cal.3d at pp. 674–675.)

In *Byrne,* the court held that Skip's alleged promise to leave all of his property to Flo was enforceable against Skip's estate. (*Byrne, supra,* 52 Cal.3d at pp. 1067–1068.) The court noted that relief under that claim might include a constructive trust to provide "quasi-specific performance" of the property agreement with respect to real property and other property "for which damages may be an inadequate remedy." (*Id.* at p. 1073.) Similarly, here, Eisenhauer has stated a claim for enforcement of Skillstad's alleged promise to leave her his property, including his real property.

In ruling that the "statute of frauds precludes an oral agreement of the nature alleged" by Eisenhauer, the trial court did not identify any particular applicable statute. Respondent

9

also does not cite any specific statute of frauds that applies here. It is not clear that any does.[5]

In any event, we need not decide that issue. Even if a statute of frauds applies, Eisenhauer has alleged sufficient facts to support a theory of equitable estoppel.

A party may be estopped from relying on the statute of frauds " 'where an unconscionable injury would result from denying enforcement after one party has been induced to make a

---

[5] In the trial court, Respondent argued that the oral agreement Eisenhauer alleged was barred by the statute of frauds because (1) it concerned the transfer of title to real property and (2) "was not to be performed during the lifetime of the promisor." (See Civ. Code, § 1624, subd. (a)(3) & (5).) The latter provision does not apply. The alleged support agreement "by its terms" *could* have been performed during Skillstad's lifetime if Eisenhauer had predeceased him. (See *Roy v. Salisbury* (1942) 21 Cal.2d 176, 181–182 ["If the terms of a contract are such that it admits of performance during the lifetime of the promisor, it is not within the statutory provision" applicable to contracts "not to be performed during the lifetime of the decedent promisor"].) The alleged property agreement also could have been performed during Skillstad's lifetime. Skillstad could have established a trust, changed his will, or otherwise given Eisenhauer an interest in his property before he died.

The former provision also does not appear to apply. The alleged property agreement was not for the sale or lease of real property (see Civ. Code, § 1624, subd. (a)(3)), but was for the right to inherit Skillstad's property upon his death. Under Probate Code section 21700, subdivision (a)(4), a contract to "make a will or devise or other instrument" need not be in writing if it can be established by "[c]lear and convincing evidence of an agreement between the decedent and the claimant or a promise by the decedent to the claimant that is enforceable in equity."

10

serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute.' " (*Redke, supra,* 6 Cal.3d at p. 101, quoting *Day v. Greene* (1963) 59 Cal.2d 404, 409–410.) "Whether the doctrine of equitable estoppel should be applied in a given case is generally a question of fact." (*Byrne, supra,* 52 Cal.App.4th at p. 1068.)

In *Byrne*, the court held that there was a triable issue of fact whether estoppel applied in light of evidence that Flo "changed her position in reliance on Skip's promises by moving in with him, performing the duties of a spouse, and retiring from her job at his insistence." (*Byrne, supra,* 52 Cal.App.4th at p. 1069.) Similarly, here, Eisenhauer allegedly cared for Skillstad and acted as his wife—and agreed to his request that they not marry—in reliance on Skillstad's promises to support her and to leave her his property. Thus, she allegedly changed her position to her detriment in reliance on Skillstad's oral promises. She has therefore alleged facts that are sufficient to support a theory of equitable estoppel.

## 3. Eisenhauer Failed to State a Claim for Tortious Interference with Contract

A nonparty to a contract may be liable in tort for intentionally interfering with the performance of the contract. (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.) The elements of such a tort are: (1) a valid contract between the plaintiff and a *third party*; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Ibid.*)

11

As these elements show, tort liability for interference with contract may be imposed only on a party *outside* the contractual relationship. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 507–508 (*Applied Equipment*) [contracting party may not be liable in tort for conspiracy to interfere with its own contract].) Otherwise, "[t]he fundamental differences between contract and tort are obscured." (*Id.* at p. 516.) Moreover, "[a] breaching party already has a legal incentive to perform—the likely prospect of liability for breach of contract." (*Id.* at p. 520; see *Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 183 [in contrast to a breaching party, "it is the prospect of liability for interference with contract that serves as the incentive to refrain from interfering with the contractual relationship"].)

Here, Eisenhauer does not allege that Wooley interfered with Skillstad's contract with Eisenhauer while Skillstad was alive. Eisenhauer does not claim that Wooley influenced, coerced, or otherwise induced Skillstad not to leave his property to Eisenhauer. Rather, Wooley allegedly interfered with the contract between Skillstad and Eisenhauer *after* Skillstad had died, by failing to honor Skillstad's contractual support and property commitments and by evicting Eisenhauer from Skillstad's house.

The problem with this theory is that, after Skillstad's death, there was no longer any third party contractual relationship that Wooley could disrupt. By that time, Skillstad had already breached his alleged promise to leave Eisenhauer his property by failing to establish any testamentary device to do so. And, although Skillstad's alleged obligation to support

Eisenhauer continued after his death, Wooley herself assumed that obligation as the trustee of the Skillstad Trust.

Under the facts that Eisenhauer alleges, Skillstad's Estate was liable for Skillstad's promise to support Eisenhauer after Skillstad died. (See *Byrne, supra,* 52 Cal.App.4th at p. 1064 [Skip's estate breached Skip's alleged support contract with Flo by "rejecting Flo's claim and thereby failing to provide her with means of support after Skip died"].) But the Estate was not a third party whom Wooley could induce to breach. Rather, the Estate was indistinguishable from Wooley herself.

According to the complaint, Wooley assumed the contractual obligations of Skillstad's Estate in her capacity as the successor trustee to the Skillstad Trust. Assuming that the Skillstad Trust was revocable during Skillstad's lifetime, assets in that trust were subject to Eisenhauer's claims against Skillstad's Estate.[6] (See Prob. Code, §§ 18200, 19001.) And Wooley herself (or Wooley's own trust) might be liable for the Estate's debts as a beneficiary of the Skillstad Trust if Wooley did not follow the available statutory mechanism for providing notice to creditors before distributing assets from that trust. (See Prob. Code, § 19400; *Arluk Medical Center Industrial Group, Inc. v. Dobler* (2004) 116 Cal.App.4th 1324, 1331–1335 (*Arluk*).)

---

[6] This assumption is a fair inference from the complaint's allegations (which we construe liberally) claiming that Skillstad promised to leave his property to Eisenhauer. (Code Civ. Proc., § 452.) Of course, because this appeal is from a ruling sustaining a demurrer, we consider only the complaint's *allegations*, not what facts Eisenhauer might be able to prove. (*Blank, supra,* 39 Cal.3d at p. 318.)

Thus, after Skillstad's death Wooley was no longer a stranger to Skillstad's promise to support Eisenhauer, but instead became the party who was responsible for performing that promise. As Eisenhauer acknowledges, as the successor trustee Wooley in effect stepped "into the shoes" of Skillstad for purposes of the trust assets.[7] Wooley might be liable in her representative capacity for breach of the support agreement, but she could not be liable in tort for interfering with her own contractual obligation.

As mentioned, Eisenhauer has not alleged that Wooley did anything during Skillstad's life to interfere with his alleged promise to devise his property to Eisenhauer. Eisenhauer also did not claim in the trial court, and has not argued on appeal, that she could amend her complaint to make such an allegation.

---

[7] Eisenhauer's complaint contains the conclusory assertion that "[a]ssuming [Wooley] was originally designated as trustee and/or beneficiary of the Skillstad Trust at the time of its creation on June 23, 2005, her designation as such was deemed revoked, abrogated, or terminated when [Skillstad] during his lifetime entered into a valid and enforceable contract with [Eisenhauer]." The allegation appears to state a vague legal conclusion rather than a factual claim. If Eisenhauer intended to allege that Wooley was not actually the successor trustee to the Skillstad Trust, there are no facts alleged in the complaint to support that claim. Such an allegation would also be inconsistent with Eisenhauer's theory of liability. Eisenhauer has sued Wooley in her representative capacity as the successor trustee and seeks to hold her liable on that basis. For purposes of this appeal, we therefore assume that Wooley was the successor trustee of the Skillstad Trust.

14

Indeed, she has not even specifically requested that this court reverse the trial court's denial of leave to amend.

However, the "issue of leave to amend is always open on appeal, even if not raised by the plaintiff." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.) Neither Respondent's demurrer nor the trial court's order identified the specific legal problem with Eisenhauer's tortious interference claim that we explain above. Eisenhauer therefore had no reason to request leave to amend in the trial court to address that problem. Moreover, in light of our disposition of Eisenhauer's breach of contract claim, Eisenhauer's complaint will proceed on at least one cause of action. Under the circumstances, Eisenhauer should be given at least one opportunity to amend her tortious interference cause of action to state a legally sufficient claim, if she is able to do so.

## 4. Eisenhauer Failed to State a Claim for Intentional Infliction of Emotional Distress

Eisenhauer's claim for intentional infliction of emotional distress is based upon Wooley's conduct in bringing a successful unlawful detainer action to evict Eisenhauer from Skillstad's house after his death. The trial court properly concluded that this alleged conduct "does not rise to the level of extreme or outrageous."

The elements of a claim for intentional infliction of emotional distress include " 'extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress.' " (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 86 (*Chang*).)

Here, Wooley simply pursued a legal remedy in court. Moreover, according to the complaint, Wooley was *successful* in

15

obtaining the judicial relief that she sought. Successfully asserting a legal claim is not outrageous conduct for purposes of a claim for intentional infliction of emotional distress. (See *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 887 (*Cantu*) ["There is no authority for the proposition that a party's attempt to submit a dispute to a judicial tribunal . . . can, in itself, give rise to a cause of action for intentional infliction of emotional distress"]; see also *Chang, supra,* 172 Cal.App.4th at pp. 87–88 [lawyer for successor trustee did not engage in outrageous conduct by sending a letter to a surviving spouse in accordance with the express terms of the trust directing her to move from her residence].)

Such conduct cannot even support a claim for malicious prosecution, which requires that a prior action be terminated in favor of the malicious prosecution plaintiff. (See *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.) Eisenhauer cites no authority for the proposition that otherwise nontortious conduct in initiating a judicial action can be considered outrageous. (See *Cantu, supra,* 4 Cal.App.4th at p. 888 ["Cantu has never presented any basis for his assertion that initiating a lawsuit can give rise to a cause of action for intentional infliction of emotional distress"].)

Eisenhauer cites *Chacon v. Litke* (2010) 181 Cal.App.4th 1234, but the outrageous conduct that the court found in that case was not the pursuit of an unlawful detainer action. Rather, it was the wrongful permanent possession of an apartment in defiance of a local San Francisco ordinance *after* a successful eviction to conduct repairs. (*Id.* at p. 1246.) Moreover, as the court noted in that case, the pursuit of the unlawful detainer action itself was clearly privileged under Civil Code section 47,

16

subdivision (b). (See *Chacon*, at p. 1255, citing *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1249– 1250 [litigation privilege preempted portion of Santa Monica tenant harassment ordinance that prescribed penalties for actions to recover possession of a rental unit without a reasonable basis].) Similarly, here, Wooley's pursuit of an unlawful detainer action " 'clearly fell within the litigation privilege.' " (*Chacon,* at p. 1255, quoting *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1486.)

Wooley's alleged conduct was not outrageous and was privileged as a matter of law. The trial court therefore did not err in sustaining Respondent's demurrer to that claim without leave to amend.

**5.     Eisenhauer Failed to State Claims for Quiet Title or Cancellation of Instrument**

The trial court correctly recognized that Eisenhauer's causes of action for quiet title and cancellation of instrument are deficient because Eisenhauer does not allege that she has any current ownership interest in the property at issue. She alleges only that she has a right to *acquire* that property by virtue of her oral contract with Skillstad.

A quiet title action seeks to "establish *title* against adverse claims to real or personal property or any interest therein." (Code Civ. Proc., § 760.020, subd. (a), italics added.) Thus, a requirement to maintain such an action is that the plaintiff own the rightful "title" to the property at issue. (See *Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 833 ["One who alleges that he is the owner of certain described real property, that defendants claim an interest therein adversely to him, that such claim is without right, and that the defendants have no

17

estate, title or interest whatever in said premises or any part thereof pleads all that the law requires in an action to quiet title"].)

Eisenhauer does not allege that she has title to any of the property at issue. She alleges only that she has a contractual right (disputed by Respondent) to be given that property.

Eisenhauer's cause of action for cancellation of instrument is deficient for similar reasons. Such a cause of action requires facts showing that the instrument in question is "void or voidable." (Civ. Code, § 3412; *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 200–201.) Eisenhauer has not alleged any such facts.

Eisenhauer has not alleged any facts showing that the Grant Deed was *void*. She has alleged only that she has a contractual claim against the property that the deed transferred.

As discussed above, by statute Wooley might be personally liable for Eisenhauer's claim against that property if she distributed assets from the Skillstad Trust without first following the available statutory procedure to notify creditors. (See Prob. Code, § 19400; *Arluk, supra,* 116 Cal.App.4th at pp. 1331–1335.) But nothing in the statutory scheme suggests that a trustee's transfer of trust assets to a named beneficiary can be ruled *void* because of a pending creditor claim. (See *Arluk*, at p. 1335 ["The potential availability of trust assets to a judgment creditor in the course of the administration of the trust . . . creates no statutory duty obligating a trustee to prefer a claimant with an unresolved claim against the estate to the interests of the trust's beneficiaries"].)

Eisenhauer has not identified any facts showing that the deed in question was void other than her own contractual claim

18

against Skillstad's Estate. The trial court therefore did not err in sustaining Respondent's demurrer without leave to amend with respect to Eisenhauer's claims for quiet title and for cancellation of instrument.[8]

---

[8] Eisenhauer has not presented any argument on appeal in support of any of the other causes of action alleged in her complaint. We therefore treat those arguments as waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

## DISPOSITION

The judgment is reversed.  The case is remanded for further proceedings on Eisenhauer's contract cause of action. Eisenhauer shall also be given an opportunity to amend her complaint, if possible, to assert a legally cognizable claim for tortious interference with contract.

In the interests of justice the parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.